# BOOKER PICKERELL

## v.

## CAROLINE MORSS et al.

*Filed at Ottawa November 17, 1880.*

1. STATUTE OF FRAUDS — *part performance.* Where possession is relied on as part performance of a contract to take it out of the Statute of Frauds, it must affirmatively appear that the party obtained possession under the agreement relied on, and in part performance of the same, and it must also distinctly appear that the improvements were made under the contract itself, and not otherwise. If the possession is taken under one holding a prior life estate, this will not avail to take a verbal contract for the sale of the remainder to him by the owner thereof, who has no present right of possession, out of the statute.

2. SAME—*contract avoided by sale and conveyance to another.* While it is true that no one but the parties to a verbal contract for the sale of land can repudiate it on the ground it was within the Statute of Frauds, yet where the vendor, by a conveyance of the property to another, places it out of his power to comply with the contract, he as effectually repudiates the contract as it is possible to be done in advance of a suit against him for a specific performance.

3. POSSESSION—*as notice of contract to purchase.* When possession of land is taken under a lease from the holder of a life estate therein, and not under a verbal contract of sale by a remainder-man, and the remainder-man, before the termination of the life estate, sells and conveys his remainder to another, the possession of the first purchaser will afford no notice of his purchase. His possession of the land is only notice of how it was in fact held, and not of any equitable rights derived from one having no right to possession.

4. NOTICE—*of parol agreement to sell land.* Actual notice of a prior parol agreement to sell land to a subsequent purchaser, when the first purchaser is not in possession under his contract, amounts to nothing, as the subsequent sale and conveyance is a repudiation of the prior contract under the Statute of Frauds, and renders the prior sale void.

5. MENTAL CAPACITY—*to uphold deed.* Mere mental weakness will not authorize a court of equity to set aside an executed contract, if such weakness does not amount to inability to comprehend the contract, and is unaccompanied by evidence of imposition or undue influence.

6. BURDEN OF PROOF—*bill to avoid deed for mental incapacity.* On bill by the conservator of a party to set aside a conveyance of land made by such party before the appointment of the conservator, the burden is on the complainant to establish by proof the allegations in his bill.

APPEAL from the Circuit Court of Knox county; the Hon. JOHN J. GLENN, Judge, presiding.

William Morris, on the 12th day of August, 1847, conveyed, by deed, the remainder, after the termination of his life estate, (which was expressly reserved,) in certain lands in Knox county, to his children, Canada, Jane, Josiah, Hiram, Rhoda, Margaret and Mahulda. Mahulda died intestate in 1854. From the date of the deed until the spring or summer of 1866, said William Morris, together with his wife and perhaps a portion of the grantees, then constituting a part of his family, continued to occupy the premises. On the first day of March, 1865, Canada Morris conveyed, by deed, his interest in the lands to Benjamin Morss.

On the 8th day of January, 1866, said William Morris executed a lease of the lands to H. H. Shelton, for the yearly rental of $80.

On the 14th day of March, 1866, Hiram Morris conveyed, by deed, his interest in the property to Benjamin Morss.

On the 23d day of October, 1866, said Hiram Morris, by another deed, purported to convey his interest in the property to H. H. Shelton.

H. H. Shelton also obtained a deed of Josiah Morris' interest, and, on the 23d day of August, 1867, he conveyed, by deed, his interest in the property to William Bolding. William Bolding, on the 2d day of April, 1870, conveyed his interest in the property to Booker Pickerell.

Pickerell also obtained a deed conveying to him the interest of Rhoda Freemont, *nee* Morris.

On the 12th day of August, 1871, the said William Morris and his wife conveyed to said Booker Pickerell all the interest they then had, or thereafter might acquire by inheritance, in the land.

On the 22d day of January, 1878, Benjamin Morss conveyed, by deed of quitclaim, his interest in the property to his wife, Caroline Morss.

William Morris having died, petition for partition was filed by Caroline Morss, claiming to be the owner of the interests of Hiram Morris and Canada Morris in the lands. Booker Pickerell, in his answer, claimed to own the interest of Hiram Morris. Subsequently, a conservator having been appointed for Canada Morris, he obtained leave to appear and file a cross-bill to set aside the deed of conveyance from Canada Morris to Benjamin Morss, on the ground of mental imbecility, and incapacity to convey.

The court below, on the original petition, decreed Caroline Morss was entitled to the interest of Hiram Morris; but, on the cross-bill, the decree was in accordance with the prayer thereof, setting aside the deed of conveyance from Canada to Benjamin Morss.

The record is brought here by the appeal of Booker Pickerell, who assigns for error the decree on the original petition, and Caroline Morss assigns for cross-error the decree on the cross-bill.

Messrs. WILLIAMS & LAWRENCE, and Mr. L. DOUGLASS, for the appellant:

The possession of Shelton was notice to subsequent purchasers of whatever title he had, legal or equitable. *Rupert et al.* v. *Mark,* 15 Ill. 540; *Brown* v. *Welch,* 18 Ill. 346; *Bone* v. *Childs,* 10 Pet. 211.

The payment of the purchase money and taking possession of the land bought by Shelton took the case out of the Statute of Frauds. *Fitzsimmons* v. *Allen,* 39 Ill. 440; *Temple* v. *Johnson,* 71 id. 13.

It is no answer to say because of the life estate he could not take possession, when the proof is he did, and then Jan. 8, 1866, united the life estate. Shelton took all the possession possible under the circumstances.

Mr. F. S. MURPHY, for the appellees:

The possession of Shelton was taken under a lease of the tenant for life, and his improvements being only what a

prudent tenant would make, are also referable to his claim as a tenant.   He could not hold possession adversely without first surrendering the possession to his landlord.   *Rigg* v. *Cook,* 4 Gilm. 351 ; *Lowe* v. *Emerson,* 48 Ill. 163 ; *Zellis, Lessee* v. *Eckert,* 4 How. 295.

To take a parol purchase of land out of the Statute of Frauds, it is not sufficient that the party was previously in possession under a lease or in any other manner, but it must affirmatively appear he got possession under the agreement relied on and in part performance of the same, and it must appear that the improvements were made under the contract. *Fleming* v. *Carter,* 70 Ill. 286 ; *Fitzsimmons* v. *Allen et al.* 39 id. 440 ; *Temple* v. *Johnson,* 71 id. 13 ; Story's Eq. sec. 764; *Wood et al.* v. *Thornly et al.* 58 Ill. 464.

There could be no merger of the life estate, as Shelton did not own it, but was a mere tenant of it.

Persons have the capacity to contract, and the exception is their want of capacity.   This exception, therefore, must be made out, and a capacity and competency will be held, not only when there is no evidence and no rule against it, but when the evidence or the rule leaves it in doubt.   2 Parsons on Contracts, 573 ; *McCarty* v. *Kernan,* 86 Ill. 291.

This court is very reluctant to set aside a deed on the ground of incompetency and fraud, and will not do so unless the evidence is very positive and clear.   *Baldwin* v. *Dunton et al.* 40 Ill. 189 ; *Lindsey et al.* v. *Lindsey,* 50 id. 79 ; *Searle* v. *Galbraith,* 73 id. 269 ; *Sheldon.*v. *Harding,* 44 id. 60.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The deed of Hiram Morris to Benjamin Morss is conceded to be prior in date of execution and of record to the deed of Hiram Morris to H. H. Shelton, but it is claimed that there was a contract between Hiram and Shelton prior to the execution of the deed to Morss, whereby Hiram sold and agreed to convey to Shelton, and that pursuant thereto, Shelton

paid Hiram the price agreed to be paid, and took possession of the land, and made valuable improvements thereon.

The evidence is conflicting as to the time when Shelton did the acts claimed as a taking of possession, and we strongly incline to the opinion that the fair preponderance is, that it was not until the spring of 1866, after Shelton had obtained the lease of the land from William Morris.

William Morris was in the actual possession of the property prior to that time, and since it is not pretended that Shelton ever made any entry upon the land in hostility to that possession, his entry must have been subordinate thereto. He says: "I held possession of the land by the purchase of Hiram and Josiah's interest, and by the promise of the three heirs that they would sell to me their interest, and by a written contract with the old man Morris that I would pay him $80 a year for his interest in all the land, except five acres in the south-west corner,"—which was fenced off to him.

It is quite clear that he did not, in this answer, distinguish between the legal interests in the land and the right to immediate possession. William Morris, until the termination of his life estate, was entitled to the sole possession of the land. The right to possession did not rest in his grantees until his prior life estate terminated, and all they could, in this regard, convey to Shelton was, hence, the right to enter upon the lands after the termination of the life estate of William Morris. Since, therefore, it is not pretended that William Morris' life estate was terminated until long after the execution of the deed by Hiram to Benjamin Morss, it is impossible that Shelton could have acquired a lawful right to possession by virtue of any contract he may have had with Hiram.

We have often held, following the well settled common law rule, that where possession is relied on as part performance of a contract to take it out of the Statute of Frauds, it must affirmatively appear that the party got possession under the agreement relied on, and in part performance of the same ; and it must also distinctly appear that the improvements were

made under the contract itself, and not otherwise. *Wood et al.* v.*Thornly et al.* 58 Ill. 464; *Worth* v. *Worth et al.* 84 id. 442; *Padfield* v. *Padfield*, 92 id. 198. So, also, the entry of the purchaser must be with the knowledge of the vendor. Browne on Frauds, § 483.

We must hold the possession of Shelton was not under and in part performance of the agreement with Hiram, but under and pursuant to the lease from William Morris; or, at all events, under and in subordination to his prior right of possession. It was not intended, and could not have been, in his contract with Hiram, that he was to have immediate possession; and he did not enter into possession with Hiram's knowledge. The contract was within the condemnation of the Statute of Frauds.

But it is contended on behalf of the appellant that Benjamin Morss had notice of the prior contract of Shelton with Hiram, and therefore took his deed subordinate to the prior right of Shelton under his contract. This notice is claimed to be proved by evidence of possession of the property, and by actual communication of the fact of the contract.

So far as Shelton's possession was concerned, we have just seen that it could not have been under and in pursuance of his contract with Hiram, and must have been under some agreement or arrangement with William Morris. It was only notice of how it was, in fact, held, and being, in fact, held under William Morris, was no notice of a contract with Hiram which did not contemplate a present possession.

The proof of actual notice rests in some doubt, by reason of the unsatisfactory and contradictory character of the evidence. But concede that it is unquestionable and ample—what does it amount to? Simply that Hiram had a parol contract, voidable under the Statute of Frauds, with Shelton, for the conveyance to him of his interest in this land. Hiram could not be made to execute this contract, and Shelton also might refuse to perform it if he chose. No act of refusal to perform and signifying an intention to rely on the statute,

15—97 ILL.

in case specific performance should be insisted on by Shelton, could be more significant than the sale and conveyance of this interest to Benjamin Morss. Hiram might lawfully refuse to perform the contract, and lawfully sell and convey to another party. So, the notice of the contract could amount to nothing.

By selling and conveying to Benjamin Morss, Morss was invested, confessedly, with the prior legal title, and there can be no superior equity in favor of Shelton, because he can make no claim to any equitable contract prior to the execution of the deed to Morss. His mere moral claim on Hiram was not enforceable in equity. True, no one but Hiram could repudiate the contract on the ground that it was in violation of the statute, but he might do so, and when, by a conveyance of the property to another, he placed it out of his power to comply with the contract, he as effectually repudiated the contract as it was possible for him to do in advance of a suit against him for specific performance.

We perceive no error in the decree on the original petition, and it is, therefore, affirmed.

We are not so well satisfied with the decree on the cross-bill.

That Canada Morris had a very low grade of intellect, is quite clear from the evidence. But mere mental weakness will not authorize a court of equity to set aside an executed contract, if such weakness does not amount to inability to comprehend the contract, and is unaccompanied by evidence of imposition or undue influence. *Willemin* v. *Dunn et al.* 93 Ill. 516 ; *Miller* v. *Craig*, 36 id. 109 ; *Lindsey et al.* v. *Lindsey*, 50 id. 79 ; *Uhlich* v. *Muhlke et al.* 61 id. 499.

Quite a number of witnesses give it as their opinion that he had not sufficient intellect to comprehend the contract, but an equal or greater number of witnesses, with equal facilities for observation, and apparently of equal intelligence, and having less interest than most of the others to bias their

judgment, give it as their opinion that he had sufficient intellect to comprehend the contract.

There are several undisputed facts which strongly corroborate these last witnesses and clearly give the preponderance to their view. Although Canada appears here by his conservator, this conservator was appointed solely with reference to the litigation involved in the cross-bill. For some time after the execution of the deed in question, no relative or friend thought it necessary to have a conservator appointed. And, since the appointment of one, it is admitted no control is taken of Canada's movements or his affairs, other than so far as affects this suit. It is not claimed that his mind was less vigorous and clear when this deed was executed than at other times. Canada married a wife and has one or more children, and has provided and cared for his family, so far as this record shows, unaided. He has made such a living as most humble and poor heads of families usually do. As a day laborer, he has earned reasonable wages and devoted them, so far as the record discloses, with as much wisdom as could the wisest have done. Those desiring such labor as he can perform, and merchants, grocers and other tradesmen, seem never to have hesitated in trading with him, on account of imbecility. The instances specified of his exhibitions of weakness, none show wastefulness or inability to appreciate the uses and value of property,—but they, for the most part, show only a foolish vanity and a ridiculous eccentricity.

There is no pretense that Morss had any peculiar influence or control over Canada;—and Canada's reasons for desiring to sell his interest were of his own suggestion, and such as might have influenced any man in his situation in life. Other heirs seem to have sold their interest—or at least one other heir did so—for a price not greater than that he received,—and, in view of the small and contingent nature of the interest, and the fact that both he and Morss labored under the belief that a suit that was threatened to divest the grantees of William Morris of their title, would have to be

defended, the price paid is shown to have been reasonable. It is not pretended that Morss was responsible for creating the rumor of the threatened suit, nor that he did not, in good faith, place as much reliance on it as did Canada.

The burden was on the conservator and complainant in the cross-bill, to establish by proof the allegations therein. This, in our opinion, he has failed to do.

The decree on the cross-bill will be reversed, and the cause remanded to the circuit court, with instructions to that court to enter a decree dismissing the cross-bill. The costs will all be taxed against the appellant.

Affirmed as to original petition; reversed as to cross-bill.

*Decree reversed in part and affirmed in part.*