L. M. SAFFER *et al.*

*v.*

HENRY G. MAST, Conservator.

*Opinion filed October 23, 1906.*

1. DEEDS—*what does not show an inadequacy of consideration.* The fact that the grantee of an alleged distracted person paid only one-half the consideration at the time of the sale, giving his note, without interest, due one year after the death of the grantor's mother, for the other half, does not tend to show inadequacy of consideration, where the grantee could not get possession until the life estate of the grantor's mother terminated, and where he had assumed a mortgage on the property and was required to pay the interest and taxes, even though he was not entitled to possession.

2. SAME—*what tends to show that consideration was adequate.* The fact that the consideration paid for an alleged distracted person's land was the same as that paid to his brother and sister for their lands, which were similarly situated but better improved than the land of the distracted person, and that the latter had offered his land to other parties, who refused to buy at the price, thinking it too high, tends to show that the consideration paid by the grantee was adequate.

3. ATTORNEY AND CLIENT—*subsequent relation of attorney and client does not affect a former business transaction.* The fact that the grantee of an alleged distracted person subsequently acts as attorney for the grantor in a divorce suit has no effect upon the sale, where at that time the grantor was represented by other persons, including a real estate agent and an attorney, and where the fees for the services of the grantee in the divorce case formed no part of the consideration for the deed.

4. INSANE PERSONS—*mere mental weakness does not justify setting aside executed contract.* Mere mental weakness does not justify a court of equity in setting aside an executed contract, provided such weakness does not amount to an inability on the part of the afflicted person to comprehend the contract.

APPEAL from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

This was a bill in chancery filed in the circuit court of Champaign county by appellee, as conservator of one Frank T. Gehrig, against appellants, who are husband and wife. The purpose sought to be accomplished by the bill was the cancellation of a deed of a forty-acre farm, executed by said Gehrig and wife to appellant L. B. Saffer, and to set aside an exchange of property made by said Gehrig and said L. B. Saffer, whereby said Gehrig afterward acquired a house and lot in Urbana, an interest in a tract of land in Mississippi and $50 in cash in exchange for a note of $2300 given by said Saffer to said Gehrig as part payment at the time Gehrig sold the forty acres to Saffer; also to set aside the sale of a $500 legacy by said Gehrig to said Saffer for $250. The bill was filed upon the theory, and charged, that said Gehrig was a distracted person, and that said Saffer wrongfully and fraudulently induced him to enter into said contracts and to make said trades, and also charged that the consideration received by said Gehrig in each of the transactions was inadequate. The answer filed to the bill denied each and all of the charges. The cause was referred to a master in chancery, and on March 19, 1905, he filed his report, reciting his conclusions of law and fact and recommending that the bill be

dismissed for want of equity. Exceptions were filed to said report by the appellee conservator, and by leave of court an amendment to the bill was filed, alleging that the relation of attorney and client existed between said L. B. Saffer and said Gehrig at the time the various transactions occurred. The exceptions to the master's report were sustained and a decree was entered finding said Gehrig to be a distracted person, and incompetent, at the time of making the various trades, to transact ordinary business; that the relation of attorney and client existed as averred in the amendment to the bill, and ordered a re-conveyance of the property acquired by the appellants to said Gehrig, directing that all of the transactions should be canceled and held to be null and void. The decree also attempted to make an equitable adjustment of the accounts between the parties. This appeal is perfected to bring the record before us for review.

L. B. SAFFER, and RAY, DOBBINS & RILEY, for appellants.

JOHN J. REA, and WILLARD LAWRENCE, for appellee.

Per CURIAM: Frank T. Gehrig's father, now deceased, by his last will devised to him in fee forty acres of land subject to the life estate of the widow of said deceased, and in addition thereto directed that another son should pay to said Frank T. Gehrig, the alleged distracted person, one year after the death of the widow, the sum of $500. Testator died in 1895, and his will was admitted to probate in November of that year. About October 22, 1902, Frank T. Gehrig and his wife, by warranty deed, conveyed to appellant L. B. Saffer said forty-acre tract of land subject to the widow's life estate. As a part of the consideration therefor Saffer assumed the payment of a mortgage which Frank T. and his mother had given on the land shortly before to secure a note of $1800 given by said Frank T., paid $500 in cash and gave

him (Frank T.) his note for $2300, payable within one year after the death of the mother, without interest. In September, 1903, L. B. Saffer and Frank T. concluded another trade, whereby said Saffer took up this note of $2300 and in exchange therefor appellants deeded to said Frank T. a house and lot in the city of Urbana valued at $3200, subject to a mortgage of $2200, one hundred acres of land in the State of Mississippi, (one-third of which was owned in fee by Saffer and the remainder held on a long term lease having thirty or forty years yet to run) and $50 in cash. It appears that the agreement made at that time was that the mortgage upon the house and lot should be for $2000, but that this amount was increased to $2200. Some time in the summer of 1903 said Frank T. sold to said L. B. Saffer the $500 legacy provided by the will of his father to be paid to him by his brother one year after the death of the mother, for $250 in cash. These three transactions are sought to be canceled and set aside by this proceeding. In June, 1904, appellee, Mast, was appointed conservator for said Frank T., who was then thirty-nine years of age. There is nothing in the record to show whether there was any contest in the county court at the time said Frank T. was found to be a distracted person.

At the time of the purchase of the land by appellant L. B. Saffer, the testimony as to its fair cash value, free and clear from the life estate of the widow and from all other encumbrance, varies from $110 to $140 an acre. The average of the appellee's witnesses fixed it a little above $130 an acre clear of encumbrance, and the average of appellants' witnesses fixed the price below $120 an acre. It was subject to the life estate of the widow of the testator, who was about seventy years of age at the time of the farm transaction and was still surviving and in good health at the time of the hearing. The loss of rents and use of the land for a very few years, even if the life of the widow should not longer extend, would justify a material reduction in the value of

Gehrig's interest. Appellant L. B. Saffer was paying for the land at the rate of $115 per acre, subject to the life estate, and when it is considered that the life estate might postpone the use and possession several years it cannot be said that the price paid was inadequate. It is true that one-half of the purchase price was not to be paid until one year after the purchaser was entitled to possession; but as the purchaser was required to assume a large mortgage, pay the annual interest thereon and pay the taxes during the time the life estate existed, without having any right to the use of the land, it cannot be said that this fact alone would be regarded as sufficient to indicate inadequacy in price. Moreover, the evidence shows that a brother and sister of said Frank T., who, the evidence shows, were regarded as possessed of good business judgment and who owned lands acquired under the will and subject to the same life estate but more valuable and with much better improvements, sold their lands to appellant L. B. Saffer at the same price per acre as that received by Frank T. Other evidence in the record fully justifies the view that Frank T. received fully as much for his land as it was worth, and it is also shown that he offered it to other parties for the same price paid by appellant Saffer, and that they refused to buy because they thought the price asked was more than the land was worth.

At the time of the exchange of the $2300 note for the house and lot in Urbana, the Mississippi land and $50 in cash, said note had an indefinite period to run. It was satisfactorily shown that the house and lot in Urbana were well worth the consideration ($3200) given by Frank T., and there is much evidence showing they were worth several hundred dollars more than the stipulated sum. It is also shown that he was offered and refused more than he paid for the Urbana property and that it rents for $25 a month. We think it clear that the additional $200 in the mortgage over and above what was originally agreed upon was applied to

the payment of cost of improvements placed on the property at the request of Frank T., and that he fully understood and agreed to these improvements and the increase in the amount of the mortgage.

The argument that there was misrepresentation as to the title to the land in Mississippi is not sustained by the evidence. It is clearly shown that Frank T. knew that he was not getting the title in fee to all of the lands there, but only one-third in fee and a long term lease for the remainder. The consideration recited in the deed for this land was $500. There is testimony in the record to the effect that Frank T. was offered $400 for the Mississippi land but refused to accept it. The great weight of the testimony shows that the consideration for the original trade and for the transfer of the $2300 was adequate and sufficient, in view of all the facts presented in this record.

It is evident from the testimony that Frank T. was making every effort to dispose of the $500 legacy before he sold it to said L. B. Saffer for $250, and that he had offered it previously to several persons who dealt in securities but that no one was willing to pay him $250 for it. It bore no interest and was payable at an indefinite time,—one year after the death of the widow, who still survived. It is almost self-evident that there is no regular market value for such a legacy as this. The present worth of any property dependent upon the life of a person, no matter in how poor health, is so problematical that it usually has no market value. In this connection it may be noted that many of the witnesses who testified for appellee as to the value of the various properties had never had any experience in dealing in properties subject to life interest.

Whether Frank T. was competent to transact the ordinary business of life at the time of these various trades was a subject of much testimony. It was shown that he had dealt with business men with whom he came in contact in such a way as to cause no suspicion that he was lacking in

sufficient mental capacity to do ordinary business. Bankers, merchants and tradesmen testified that they had dealt with him and regarded him as a capable man. He was a married man, and the evidence shows he was able to accumulate property; that he had at one time carried on the business of draying and dealt with nearly every merchant in Seymour, where he lived. He borrowed money from various banks and persons and gave his notes therefor, and was generally regarded as capable of carrying on business. He also loaned some of his money and took notes therefor and looked after the collection of the same. He acquired a house and lot in Seymour which he sold, and it was shown that the person who purchased it from him had not been able to realize as much as he paid for it. A few months before these trades in question he and his mother joined in mortgaging the land for $1800, and the money was paid to Frank T. and used by him without any restraint from his friends or relatives. There is no proof tending to show that he dissipated or wasted the money. It is true that he had a limited education and perhaps was not of a high order of intellect, but there is little to be found in the record to indicate that he was in anywise mentally unbalanced at the time of the transactions here involved. Many of his own relatives, as well as some of the witnesses called by appellee, testified that they thought he was competent to transact ordinary business. Not only the greater number of witnesses, but the great preponderance of evidence in this record, shows that he was mentally capable of carrying on business transactions. Manifestly, too, the witnesses who testified to this effect were certainly as well qualified to speak because of their acquaintance and various dealings with him as were those who were of the contrary opinion. Mere mental weakness, as was said by this court in *Pickerell* v. *Morss,* 97 Ill. 220, will not authorize a court of equity to set aside an executed contract if such weakness does not amount to inability to comprehend the contract. We have no doubt from the entire record in this case that at the

time of the transactions in question said Frank T. Gehrig comprehended fully every phase of the transactions in which he was engaged.

Appellee insists that the relation of attorney and client existed at the time of these various transactions, and therefore the burden rests upon appellants to show fairness, adequacy and equity in all the dealings. L. B. Saffer is an attorney at law, and while the evidence shows that he appeared as solicitor for said Frank T. in a suit for divorce some months after the sale of the land by said Frank T. to him, there is no direct proof in the record that at the time of the sale of said land he was employed in any such capacity. The suit in question was not instituted for some time after the land trades. The divorce case was the only legal matter in which said L. B. Saffer appeared as attorney for Frank T. The proof shows beyond dispute that at the time of the purchase of the land other persons were acting as advisers to Frank T., including a real estate agent and an attorney, and that he also consulted with his brother about the sale; that Saffer did not approach him seeking to buy the land, but was telephoned to come to the office of Frank's agent, and there Frank T. and the agent made the offer to the said appellant,—the same offer that had been made to other parties and rejected by them as being too high. A decree of divorce was granted in the case in which L. B. Saffer appeared as attorney at the first term of court after the institution thereof, and none of the transactions sought to be avoided occurred while the relation of attorney and client existed. There is no doubt because L. B. Saffer is an attorney and acted in that capacity for said Frank T. that his relations ought to be examined with more care than would otherwise be the case. It is very evident from the testimony that he did not seek or urge these trades upon Frank T.; that at the time of the transfer of the said $2300 note the second wife of the said Frank T., who is admitted to be a woman of good judgment, took an active part in the trade.

The only testimony in the record as to the cash value of the $2300 note in the original trade of Saffer to Frank T., and figuring according to the usual life rates as to expectancy of the life of the widow, would make it worth about $1700. He received $500 in cash and an $1800 mortgage was assumed. Figuring this note at $1700 would make the actual cash value paid for the land in the original trade $4000, or $100 an acre. The master in his report finds that after the trades were all over, Frank T. Gehrig had actually received from L. B. Saffer $550 in cash, a house and lot reasonably worth $1200 above all encumbrance and Mississippi land worth $400, and had been relieved of the payment of a mortgage of $1800, so that he actually received by the final trade $98.75 per acre. This, in our judgment, is all that the testimony shows that the land is worth, with its poor improvements and subject to the life estate of the mother. All the testimony was taken before the master in chancery and the trial judge did not see and hear the witnesses testify. The rule of law that when the chancellor hearing the case has seen and heard the witnesses in a cause of this kind a reviewing court will not interfere with the findings unless it considers them palpably erroneous does not therefore apply.

Admitting that L. B. Saffer's actions because he had acted as attorney for Frank T. Gehrig should be scanned closely and that he has the onus of showing that the price paid was a reasonable and satisfactory one, still we are compelled to conclude, in the light of all the testimony, that the decree below is contrary to a clear preponderance of the proof. It is therefore reversed, and the cause will be remanded to the circuit court with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*