# CHARLESTON.

## GALLAHER *v.* CITY OF MOUNDSVILLE.

1. INJUNCTION—RES JUDICATA.

    An order dissolving an injunction, based on the merits of the case, where the only relief sought by the bill is such injunction, is, as regards finality, such a decision as will sustain the defence of *res judicata.*

2. INJUNCTION—RES JUDICATA.

    Where a bill asks an injunction against the issue and sale of municipal bonds, because of alleged invalidity of the ordinance authorizing their issue and of the bonds themselves, under the law, and asks no other relief, and such injunction is dissolved on the merits, the order of dissolution will, as regards identity of the subject-matter, bar a subsequent bill seeking an injunction against the collection of taxes levied to pay interest on such bonds, so long as the order of dissolution is unreversed.

3. INJUNCTION—RES JUDICATA—PARTIES.

    Five persons, as tax-payers, on behalf of themselves and all other tax-payers of M. obtain an injunction to restrain the issue and sale of municipal bonds on account of their legal invalidity, the defendants being the mayor and clerk of the city authorized by such ordinance to sign and countersign and seal said bonds and deliver them to commissioners authorized by the ordinance to receive and sell the same. Said injunction is dissolved. Afterwards two of these plaintiffs, as tax-payers, obtain an injunction to restrain collection of taxes to pay interest on said bonds on account of their legal invalidity, the defendants being the city and its marshal. There is sufficient identity of parties here to justify the application of the defence of *res judicata.*

*Ewing, Melvyn & Riley* of counsel for appellant cited:

14 Kan. 463; 46 Md. 67, 71; 61 Ind. 1; 80 Ill. 270; 27 Mo. 560; 2 Rand. 103; 2 Dan. Neg. Instr. (2d. Ed.) § 1545; Dill. Mun. Corp. (4th Ed.) § 917 note 2, 924 note 1; 21 How. 539, 544, 545; 12 C. E. Green 293; 2 Des. Tax, 657, 658, 666; 29 Ohio St. 500, 511, 512; 29 Ind. 192; 39 Ia. 267; 34 Ind. 192; High Inj. (Inj. 2d.) § 1549; 63 Barb. 288, 294; 10 Am. & Eng. Ency. 863, 869 & note; 1 Pom. Eq. Juris. 293; High Inj. (2nd Ed.) § 497; 47 Ia. 42; Acts 1872, c. 141, s. 9; Code, c. 85, s. 16; 2 Par. Cont. (5th Ed.) 510 note; 19 Ohio St. 586; 31 Mich. 421, 423; 77 Ind. 371, 376; 96 U. S. 433, 440; 33 Gratt. 245, 250.

*J. J. Jacob* of counsel for appellant, cited Gr. Br. Ult. Views 268 note a.; 2 Dan. Nego. Instr. §§ 1537–1542; Acts 1872–3, c. 141; 72 U. S. 772. 92 U. S. 491; 132 U. S. 107; 112 U. S. 183; 14 Wall. 282; 1 Wall. 84; 13 Otto 562; Id. 648; 24 How. 286; 73 N. Y. 238; 48 Mo. 390; 9 Otto 214; 26 W. Va. 488; 10 W. Va. 250, 283–295; 76 N. Y. 256; Big. Estop. 68, 72–78; 9 Otto 676; Id. 684; Dan. Ch'y Pr. 402 and notes; Const. Art. X, s. 8; Acts 1889, c. 4, s. 33.

*J. B. McLure* for appellees, cited:

21 Barb. 644; 19 Ohio St. 586; 31 Mich. 423; 2 Am. & Eng. Ency. 162; 1 Dill. Mun. Corp. §§ 89, 449, 457; 30 W. Va. 439; 101 U. S. 693; Cool, Const. Lim. (3rd Ed.) 124, 125; 5 McL. 158; 1 Minn. 104; 22 Wis. 54; 25 W. Va. 324; 3 Am. & Eng. Ency. 691; 30 W. Va. 435; 1 Dill. Mun. Corp. §§ 130–138; 89 Ill. 347; 12 Wheat. 64, 68; 51 Tex. 532; 73 N. Y. 338; Acts 1872–3, c. 141, s. 8; 28 W. Va. 698; 26 W. Va. 488; 23 W. Va. 667; 19 W. Va. 408, 435; 23 W. Va. 667; 16 W. Va. 527; 9 W. Va. 162; 7 W. Va. 501; 13 Gratt. 78; 2 Dill. Mun. Corp. §§ 914–923; 39 Ia. 543, 548; 44 Md. 446; 1 Dan. Ch'y Pr. (4th Ed.) 295; 1 Gratt. 316; 13 W. Va. 22; 7 C. E. Greene 583; 26 W. Va. 488; 6 Wart Act. & Def. 599, 500, 775, 787; 2 Dev. 244; 17 Vt. 138; 3 Pa. St. 434; 7 Metc. 570; 65 N. C. 478; 45 Pa. St. 161; 10 Ohio St. 45; Warth's Code c. 133, s. 13; 1 Bar. Ch'y Pr. 377; 14 Gratt. 48; 7 Johns. Ch'y 1; Sto. Eq. Pl. § 791; 10 Mass. 72; 3 Jones (N. C.) 225; 9 Pa. St. 345; 14 Ohio St. 325; 34 Barb. 28; Cool. Const. Lim. (2nd Ed.) 48, 49; 92 U. S. 735; 103 U. S. 735; 29 Mich. 19; 16 Ohio St. 615, 625.

BRANNON, JUDGE:

On the 5th day of February, 1890, the council of the city of Moundsville passed an ordinance providing for the issue and sale of its bonds to the amount of twenty thousand dollars, to enable the city to pave its streets, and submitted the question of the issue of such bonds to a vote of the people, and they ratified the proposition, and such bonds were issued and sold. The council having included in its estimate of expenditures for the year 1890 the sum of

one thousand two hundred dollars to pay interest on said bonds, and levied taxes including it, J. W. Gallaher and B. W. Price, tax-payers and owners of property in the city, suing for themselves and all other tax-payers and property owners of said city, upon a bill by them against the city and Robert Low, its Marshal, obtained an injunction restraining the collection of a certain *per centum* of the taxes within the city on property, and especially that *per centum* of the taxes imposed on said Gallaher and Price ; and, the Circuit Court of Marshall county having overruled a motion to dissolve said injunction, the city of Moundsville has appealed to this Court from the order overruling said motion.

We shall not decide the merits of this controversy, deeming it improper to do so, for the reason that we are of opinion that the defence of *res judicata* made by appellants ends this cause.

The plaintiffs in the present cause, together with three others, suing for themselves and all other tax-payers of the city of Moundsville, before the bonds were issued, obtained an injunction to restrain the issue and sale of the same; which injunction was on the 2d of May, 1890, dissolved, but the bill was not dissmissed. There was no appeal from this order, and the same stands in full force. An examination of the books has brought me to the conclusion that the essential elements of *res judicata* are present in the case to make that order an estoppel to this suit. "The essential conditions under which the plea of *res judicata* becomes applicable are the identity of the thing demanded, the identity of the cause of demand and of the parties in the character in which they are litigants." Herm. Estop. § 102. What was the thing demanded in the former suit ? The bill alleged that the council of Moundsville passed an ordinance for the issue of twenty thousand dollars in bonds, submitting the question of their issue to the people, and making various provisions ; that the people had approved it ; that the city officers would prepare and issue the bonds, and deliver them to certain persons named by the ordinance as commissioners to sell them ; and that they would sell the same unless enjoined. It further alleged that the ordinance for the issue of the bonds was null and void, and that any bonds issued and

sold under it would be void, because the ordinance was in violation of section 8, art. X, of the constitution, and also in violation of a statute entitled "An act authorizing municipal corporations to issue bonds," passed December 2, 1873; and it prayed that an injunction be awarded restraining Louis B. Purdy, the mayor, and L. G. Brock, the clerk, from preparing, signing and countersigning and sealing and delivering the bonds to H. W. Hunter and F. W. Brown, the commissioners, and restraining the latter from selling them. The defendants demurred and answered admitting all the facts, and contesting only the contention that the ordinance and bonds were void; and on this demurrer, and a motion to dissolve, the injunction was dissolved.

What is the thing demanded in the present suit? The bill sets out the same ordinance and vote, and states that under the ordinance the bonds had been issued and placed in the hands of the commissioners for sale, and that they sold the same, and that the council made a levy of taxes for the year 1890, including one thousand two hundred dollars, to pay interest on the bonds; and charges that the levy of taxes to pay such interest is illegal because the bonds are null and void, without saying wherein specifically, leaving it to be deduced as a matter of law from the faces of the ordinance and bond set out literally in the bill. Now invalidity of the ordinance and bonds under the law is the ground, the only ground, on which an injunction was asked against the issue of the bonds; and invalidity of the ordinance and bonds is also the only ground on which an injunction was asked against the collection of taxes levied to pay interest, for no other ground is suggested or can be gathered from the bill. The ground specified in the first bill was more specifically stated than in the second, but only in the fact that it alleged the nullity of the ordinance and bonds to consist in the violation of a particular section of the constitution and a particular statute, while the second bill alleges the ordinance and bonds to be void, without saying why, leaving it to be inferred from the ordinance and bonds set out. Invalidity of ordinance and bonds is the point of both bills—a judicial sentence of their

nullity on identically the same facts is the thing demanded, the relief sought, by both. The one was for an injunction against their issue; the other, owing to the further facts, occurring later, that they had been issued, and taxes had been levied to pay interest, was to enjoin the collection. If the parties are the same in both suits, and the decree had dissolved the injunction and dismissed the bill, thus holding the ordinance and bonds valid, could the same parties turn around and enjoin taxes levied to pay bonds so held valid? I think not. Why not? Because of the decision holding the bonds valid. It would have put on them the stamp of validity. This is just what was done by the order of dissolution in the first suit. There is identity in the subject-matter of the two suits. The question of the validity of the bonds arose and was necessarily decided in the first. This Court said in *McCoy* v. *McCoy*, 29 W. Va. 794 (2 S. E. Rep. 809) that "the conclusiveness of the judgment or decree extends, beyond what may appear on its face, to every allegation which has been made on the one side and denied on the other and was in issue and determined in the course of the proceeding. If it appears by the record that the point in controversy was necessarily decided in the first suit, whether upon the law on demurrer or upon the facts in issue, it can not be again considered in any subsequent suit between any of the parties or their privies." The same facts were stated in both bills. There was no issue on them. It was a decision on the law of the case on demurrer and motion to dissolve. The pith and point of the litigation was inevitably decided, for without it the order of dissolution could not have been made. The same facts sustain the claim in both bills. "If it be doubtful whether the second suit is brought for the same cause, it is a proper test to consider whether the same evidence would sustain both actions and what was the particular point or matter determined in the former action." Herm. Estop. §§ 1272, 111; Bigelow, Estop. 79. It is the true test. Freem. Judgm. § 259.

The principle runs through nearly all American cases that a judgment is conclusive, if on the direct point, though the object of the two suits be different, says Freeman on

Judgments, § 254. Thus, I think it clear that two elements necessary under the plea of *res judicata* are here, namely, identity of the thing demanded, and identity of the cause of demand·or cause of suit. Next, is there identity of parties? Certainly, the plaintiffs here, having been plaintiffs in the former bill, can not set up that there were three other plaintiffs. They ask only the same thing.

The case of *Western M. & M. Co.* v. *Virginia C. C. Co.*, 10 W. Va. 250, holds "that it is not necessary that precisely the same parties were plaintiffs and defendants in the two suits, provided the same subject in controversy between two or more of the parties, plaintiffs and defendants to the two suits, respectively, has been in the former suit directly in issue and decided." The fact that others are concluded as well as they can not enable the plaintiffs to escape the effect of the decision. Herm. Estop. § 194; Freem. Judgm. § 160; *Thompson* v. *Roberts*, 24 How. 233. And, outside of this, the fact that the second bill, as did the first, makes its plaintiff sue for themselves and all other tax-payers, would include the three former plaintiffs omitted from the present bill by name. So both bills are, in law, by the same plaintiffs. As to the defendants : In the first suit they were the mayor, the clerk of the council and two commissioners appointed by the ordinance to sell the bonds, and city officials, representing and acting for it, and it alone, without private interest; while the defendants in this bill are the city of Moundsville and Robert Lowe, its marshal, without private interest. The public interest or authority and that only, is represented by the defendants in both bills.

In *State* v. *Railroad Co.*, 13 S. C. 290, a bill by tax-payers to enjoin county commissioners from issuing bonds was dismissed on its merits, and the decree was held a bar to an action in the name of the state at the relation of other tax-payers against the commissioners and holders of the bonds to have the bonds adjudged illegal and void. The same point or question—validity of the bonds—had in that case, as in this, been passed on. The defendants in the first suit represented the city. I do not say that in any case—as, for instance, a judgment against a town in a case to which only the mayor or other officers were parties, and the town not—

the town having capacity to sue and be sued as a corporate being, the town would be bound; but in this particular matter the mayor and clerk were made agents to sign, countersign, and deliver the bonds, and the commissioners agents to receive and sell them, and, though the city was not a formal defendant, yet in this instance these agents represented it fully. Can it be said that, if the injunction had been perpetuated, or while it stood, the city could have gone on and issued the bonds? I think not. It had appointed others to act for it herein, and they were enjoined. Herm. Estop. § 155, says: "An action is between the same parties, so as to be within the principle of *res judicata*, not only when the same persons are parties, but when they have appeared by their agents and representatives."

Another point suggested to me serious doubt whether the principle of *res judicata* would apply. It is a principle that, to support the theory of *res judicata*, the judgment or decree must be final, and it is broadly laid down in Virginia decisions that an injunction may at any time be reinstated. *Radford* v. *Innes*, 1 Hen. & M. 7. But I conclude that such reinstatement is not as a matter of course, but cause must be shown by further evidence during the pendency of the case. *Toll Bridge* v. *Free Bridge*, 1 Rand. (Va.) 206; *North* v. *Perrow*, 4 Rand. (Va.) 4; Bart. Ch'y Pr. 470. But at any rate, until reinstatement or reversal, there stands the order of dissolution, adjudging the law of the case on the facts. Our statute (Code 1887, c. 135, s. 1, cl. 7) so far makes an order, either dissolving or refusing to dissolve an injunction, final in nature as to allow an appeal from it. Outside that statute, the authorities conflict as to right to appeal, but the weight is against it. Perhaps it may be said that the stronger cases hold that, where the dissolution is on the merits, it is appealable. Where no relief is sought but an injunction, an order of dissolution is final. Bart. Ch'y Pr. 472; High, Inj. § 1706. The bill in the first case here sought no other relief. But in Virginia, outside that statute, it is held that an appeal will lie from an order dissolving or refusing to dissolve.

The case of *Railroad Co.* v. *City of Wheeling*, 13 Gratt. 57,

was under that statute, but the opinion shows that it was only declaratory of what already was the law. Judge Moncure says : "As to the objection that no appeal lies from the other order, it being a mere refusal of the judge in vacation to dissolve the injunction, and not an order adjudicating the principles of the cause, there seems to be no substantial difference between the provision on this subject in the Code (page 682, c. 182, s. 2) and the law as it existed when the Code took effect.

In *Lomax* v. *Picot*, 2 Rand. (Va.) 247, it was decided that an order overruling a motion to dissolve an injunction might come within the terms of the law allowing appeals from interlocutory orders, and within the mischief intended to be remedied by that law." So, also, in *Talley* v. *Tyree*, 2 Rob. (Va.) 500, Judge Moncure said the refusal to dissolve in the case in 13 Gratt., *supra*, adjudicated the principles of the cause, and the two prior Virginia cases cited proceeded on that ground. If a refusal to dissolve adjudicates principles, certainly, a *fortiori* perhaps, does dissolution. And in this case the dissolution left nothing yet to be decided, the question of the validity of the bonds being the sole point of litigation. Therefore the order refusing to dissolve the injunction is reversed, and this Court, making such order as the Circuit Court should have made, doth adjudge, order, and decree that said injunction be dissolved, and the bill dismissed.

REVERSED.   DISMISSED.