G. W. WALTON ET AL. *v.* R. F. LOWREY.

1. STATUTE OF FRAUDS. *Standing timber.*

A parol agreement authorizing the cutting of standing timber on lands, is within the statute of frauds.

.2. LICENSE. *Revocable.*

A sale of growing timber by parol is a license, and authorizes an entry upon the land, but the same is revocable at the will of the seller.

FROM the circuit court of Covington county.

HON. A. G. MAYERS, Judge.

The facts are stated in the opinion of the court.

Instructions numbers one and three, referred to in the opinion of the court, were as follows:

" 1. The court instructs the jury for the defendant that if they believe, from the evidence, that Walton was paid for the timber cut by Lowrey, then they should find for the defendant."

" 3. The court instructs the jury for the defendant that if they believe, from the evidence, that Lowrey obtained leave and license to cut the timber, and paid for the same, then they should find for the defendant."

*McIntosh & Mounger* and *J. F. N. Huddleston*, for appellants.

The verbal sale of the standing timber was within the statute of frauds, not being evidenced by any writing, and was revocable, and was revoked. Section 2434, code 1892; *Ib.*, § 4225; *Harrell* v. *Miller*, 35 Miss., 700; Am. & Eng. Enc. L., vol. 13, p. 1020; *Gothard* v. *Flynn*, 25 Miss., 58; *McKenzie* v. *Shows*, 70 Miss., 388. It was an incumbrance upon the homestead, and, as such, was void. Code 1892, § 1983; *Mc-*

*Kenzie* v. *Shows, supra.* Even if a license to enter were given, it was revocable, and it was revoked, as shown by the evidence. Am. & Eng. Enc. L., vol. 13, p. 539, *et seq.; Wood* v. *Ledbetter,* 13 M. & W., 837.

*Henry Mounger,* on same side.

The three propositions involved are these: (1) Will a parol sale of standing trees operate as a license to cut the trees? (2) Will a parol sale of timber on the homestead by the husband alone operate as a license to cut the trees? And (3) will such parol sale, if it operate as a license, bind the husband so that he cannot revoke it? The court below, it is respectfully submitted, decided all three of the propositions erroneously. As to the first one, see Am. & Eng. Enc. L., vol. 13, p. 543; as to the second one, see *McKenzie* v. *Shows,* 70 Miss., 388; as to the third one, see code 1892, § 1983. Surely a license created by parol must be revocable, or else the statute of frauds is completely circumvented.

*Watkins & Travis,* for appellee.

A trespass on land is an unlawful entry upon land. It implies a wrongful, an unlawful, act. The facts of this case show conclusively that appellee has been guilty of no such act. What he did was done with appellant's permission—a permission bought and paid for, and which was therefore irrevocable. We invoke no new principle. The law in support of our contention is as old as the statute of frauds itself. It was clearly recognized, defined and applied by this court in the case of *New Orleans, etc., R. R. Co.* v. *Moye,* 39 Miss., 374, and we confidently rely on that case as decisive of this in appellee's favor.

STOCKDALE, J., delivered the opinion of the court.

This cause was instituted in justice of the peace court in Covington county, and judgment rendered for plaintiffs, and defendant appealed the cause to the circuit court of said county,

and, at the July term, 1896, thereof, a trial was had, and a verdict and judgment for defendant, from which plaintiffs appealed to this court.

In July, 1891, defendant Lowrey made a parol agreement with G. W. Walton for the sale by Walton, and purchase by Lowrey, of the standing timber on 120 acres of land, a part of northwest quarter, section three, township six, range fifteen west, situated in Covington county, Mississippi, and which northwest quarter is the homestead of Walton and his wife, who occupied it as such, and Lowrey paid Walton the agreed price, $110, and was to take the timber off within two years. Before the expiration of the two years, having failed to take the timber off, Lowrey made another parol agreement with Walton for an extension of time for two years longer, as he claims, which Walton and wife claim was for one year, and paid $10 for same. Before the expiration of that two years, Lowrey procured another extension of time from Walton alone indefinitely, at the rate of $10 per year, and paid on that $5.85. To that first agreement, the wife of Walton (Mary Walton) assented and acquiesced in the first extension, but refused to consent to any further agreement about the timber. All of these agreements were verbal; no writing of any character entered into any of them. Some timber was cut during the first extension. On August 1, 1895, Lowrey, hearing that Walton and wife were dissatisfied, went to see them about cutting the timber, and Walton and wife both told him he had had time enough, and forbade his cutting any more timber upon their land. Lowrey went to cutting the timber, and Walton went to where he was cutting and forbade him again, but Lowrey cut eighty pine trees after he was forbidden to cut any more by both Walton and wife. They brought suit.

The parol agreement and the first extension, to which the wife assented, operated as a license to Lowrey to enter upon the land without committing a trespass, but did not authorize him to cut trees; but when she refused to assent to further extension,

and she and her husband forbade Lowery to cut timber, the license to enter terminated, and, in cutting standing timber on Walton's land after that, Lowrey was a trespasser, and could not set up his parol agreement in defense of plaintiffs' demand. No higher estate in lands than a lease for one year (which does not authorize the cutting of timber except for repairs) can be conveyed from one to another by. parol, and, when it is established that growing timber is a part of the realty, this controversy will be terminated.

It is laid down in *Harrell* v. *Miller*, 35 Miss., 700, that, "when the statute of frauds speaks of '.lands, tenements, and hereditaments,' it must be understood to refer to them in such sense as the terms imported at common law, and, according to the principles above stated in that case, growing trees must be considered as pertaining to the soil and embraced by the terms of the statute." To permit a parol sale of growing timber, and authorize the vendee to enter and cut and remove it, would be to invite the same evils that the statute of. frauds was intended to remedy and prevent. To convey the growing timber is to convey an interest in the land, and a parol sale of the timber is therefore void, and could not be enforced even if all the purchase money had been paid. After the two recent matured decisions of this court—*McKenzie* v. *Shows*, 70 Miss., 388, delivered by the present chief justice, and *Nelson* v. *Lawson*, 71 Miss., 819, by Chief Justice Campbell, both referring to and recognizing and reannouncing the doctrine laid down in *Harrell* v. *Miller*, decided in 1858, and practically acquiesced in by the bar of the state—it must be regarded as the definitely settled law in this state that parol agreements for the sale of growing timber; to be secured and removed from the land in future, are void, and confer no rights on the purchaser. "It is conceded to be law that, if the contract was executory, it conferred no right, because not in writing," says Chief Justice Campbell, in *Nelson* v. *Lawson*, referring to *Harrell* v. *Miller*.

We have examined all the authorities cited by counsel on both sides, and many others, but, in view of the adjudications above referred to, we deem it unnecessary to quote further authorities beyond our own state.   Counsel for appellee insist that the principle announced in *Railroad Co.* v. *Moye,* 39 Miss., 374, is applicable here.   In that case suit was brought by plaintiff's intestate to recover damages for constructing a railroad through his land, he having made a verbal agreement giving the railroad company the right of way.   The court held that the verbal contract operated as a license to enter upon the land, and therefore defendant was not guilty of trespass.   But the court also said in that opinion that the verbal agreement set up in that case was not a contract at all, and never was binding as such upon plaintiff's intestate; '' but it was a mere license or permission, revocable at any period, unless where such revocation would operate as a fraud or injury upon the party to whom it was granted.''   The railroad company had entered on the lands of the owners, and completed the work without any revocation of the license.   In the case in hand, appellants, acting upon the principle laid down in the case cited—that the parol agreement was a mere license or permission to enter upon their lands, and not binding as a contract upon anybody— revoked the license; and both Walton and wife had forbidden him to cut timber upon their lands, ·which lands were part of their homestead.   In fact, the wife had not assented to, nor in any way countenanced, the second extension under which Mr. Lowrey claimed the right to cut the eighty trees sued for.   Wherefore appellee was without authority of law to either enter upon the lands of appellants, or to sever and remove growing timber therefrom, and may be held to liability as a trespasser for the eighty trees sued for in this case.

It will not be necessary to discuss the instructions that were refused, inasmuch as the instructions given at the instance of defendant were clearly erroneous, and, for that reason, the cause must be remanded; particularly the second instruction

for the defendant, which announces the law to be that "a parol license is sufficient to authorize defendant to cut and remove timber from the land of another." The adjudications in this state do not sustain, but are directly to the reverse of, that proposition. The giving of instructions No. 1 and No. 3 was also error. It follows, therefore, that the motion for a new trial ought to have been sustained, and a new trial granted.

*The judgment of the court below is reversed, a new trial granted and the cause remanded.*