# CHARLESTON.

FLUHARTY et al v. MILLS.

Decided March 30, 1901.

1. BILL—Court—Decree—Demurrer.

When a court decrees upon a bill without in words over-ruling a demurrer, it is to be treated as overruling the de-murrer. (p. 451).

2. INJUNCTION—Cutting Timber.

Injunction against cutting timber, when sustainable. (p. 452).

3. MOTION TO DISSOLVE—Res Judicata.

A decree dissolving an injunction upon the merits, where no relief but injunction is sought, is final and res judicata. (p. 454).

4. REAL ESTATE—Statute of Frauds—Timber.

Growing trees are part of the land, and a sale of them must be in writing under the statute of frauds. An oral sale of them is revocable until executed but, when executed by severance of the trees, they become chattels, and belong to the purchaser. (p. 455).

Appeal from Circuit Court, Wetzel County.

Action by Fanny Fluharty and others against John Mills. Decree for plaintiffs, and defendant appeals.

*Reversed in part and affirmed in part.*

THOMAS P. JACOBS, for appellant.

ENGLE & RIGGLE, for appellees.

BRANNON, PRESIDENT:

A conflict of title existing between the heirs of Jacob Fluharty and John Mills to land in Wetzel County, the Fluharty heirs brought an ejectment against Mills to settle the conflict. Pend-ing it the Fluhartys sued out an injunction upon the allegation that Mills was cutting valuable timber on the land restraining Mills from so doing. The Fluhartys, as is alleged, sold certain timber on the land claimed by them to Conway, and certain other timber to Henderson, and he sold his right to Conway. Under such right Conway cut timber from the land, and then Mills obtained an injunction to restrain the Fluhartys and Con-

way and Henderson from cutting timber or removing timber which had already been cut. The two injunction causes were consolidated. While they were pending the court gave Mills leave to take the timber which had been cut, and convert it into lumber, and hold its proceeds subject to the disposition of the court. The court entered one decree expressing the opinion that Mills had no title to the disputed land, and that Conway and Henderson, had good title to the timber under their purchases from the Fluharty heirs, and wholly dissolving the injunction which had been awarded to Mills to restrain his adversaries from cutting and removing any timber, and referring the cases to a commissioner to report the value of the timber which so went into the hands of Mills under the order of the court. Upon the report of a commissioner the court entered a decree for the sum reported as the value of timber against Mills in favor of the administrators of Conway, and from these two decrees Mills appeals. The Fluhartys and Mills compromised the ejectment after the beginning of the chancery suits and the Fluhartys conveyed their title to the land itself to Mills.

For Mills it is suggested that the circuit court erred in not deciding his demurrer to the Fluharty bill Though it did not in terms do so, it did so in law by going on to decree upon the bill, and thus held it good. *Hinchman* v. *Ballard, 7* W. Va. 152. So, the question is: Is the bill good? As stated in Hogg's Equity 355 and *Watson* v. *Ferrell,* 34 W. Va. 406 a bill to enjoin a trespass on land must aver good title, an irreparable injury, or in lieu of the latter, the insolvency of the trespasser, and a general charge of irreparable injury will not do, but it must be specified wherein the irreparability of injury consists. This bill says that the injury is irreparable in that the timber is especially valuable to the land and that the disrobing it of timber will permanently injure and damage it. I think it comes up to the measure. I thought without regard to this feature, as the bill charged the pendency of ejectment to try title, this would give right to the injunction to keep the property in the same condition, so that if there should be a recovery it might be in the same condition as when the ejectment began; but I find that my first impression is denied by *Cox* v. *Douglass,* 20 W. Va. 175, holding that the mere fact of the pendency of ejectment will not give right to injunction, because damages may be recovered for the injury. I thought that injunction would lie from the

fact that section 5, chapter 92, Code, gives a court power pending ejectment, if injury be done by the person in possession, thus making it a wrong, to deprive the tenant of possession, and put the land in the hands of an officer; but the case cited does not uphold this view. There are other decisions supporting the other view. 22 L. R. A. 237.

Was Mills entitled to the cut timber? He was not at the date of the suits. Though the title under which he claimed was a grant issued by Virginia to Isaac Hilliard in 1797, and the claim of the Fluhartys was under a grant issued to Isaac Hoge much later, 1848, yet the imperfect, unsatisfactory evidence fails, in the land law language, to "identify" the Hilliard grant, fails to so locate and fix its lines as to show that it covered the ground on which this timber was cut, while the evidence does fairly show that the Hoge grant does cover it, and therefore Mills showed no right to the land and of course, none to its timber. If even the Hilliard patent had been shown to cover the ground producing this timber, I think possession under the Hoge junior claim was sufficient to give good title to the extent of its bounds—possession within the interlock. I think the circuit court's finding in that respect is right. Such is the pose of the case tested by these two titles; but Mills complains that he wanted to show instruments of title, and further brace his title by evidence before the commissioner, which right was denied by the commissioner. Mills says that the decree had no decisive character, but was merely expressive of opinion, not actually decretal in character, because it merely said that the court was of opinion that Mills had no title, and did not carry it into decree. I would agree that a mere expression of opinion by a court is no judgment or decree unless carried into judgment or decree. There is no use of doing, as some courts do, expressing an opinion and then decreeing it, the decree alone being opinion and act, and the expression of opinion is surplusage. But here the court did effectuate its opinion by actual decree in dissolving the injunction of Mills. All that his bill asked was an injunction to prevent cutting and removal of the timber, and the decree of dissolution on the merits was final and *res judicata* upon title to land and timber, and closed the question. *Gallaher* v. *Moundsville,* 34 W. Va. 730; *Burner* v. *Hevener, Id.* 774. Mills could not get in his papers to show claim under the old

patent, because of that decree. Nor could he get in his title by purchase from the heirs without further pleadings. But Mills claims further that Conway and Henderson had no right to the timber because their purchase was evidenced by no writing, as required by the statute of frauds and perjuries. What matters that to Mills, tested by the old patent, since he had no right to the timber on which to justify his suit? So, Mills having no title, was properly compelled to pay for it to Conway, who cut it. The Fluhartys having title to the land might have claim against Conway; but that is not a matter that, under the record as it was, concerns Mills, and the decree protects Mills against any claim of the Fluhartys for this cut timber. In the suit they failed to claim the money.

But what as to the timber still standing? Has Mills or Conway the better title to it? It appears from the answer of Conway that after all these suits were in life the Fluharty heirs conveyed the land to Mills. Did such conveyance carry the timber still standing to Mills, or did not Conway and Henderson under their purchases from Fluhartys have right to that timber? For this question the facts are that Simeon W. Fluharty, one of the Fluharty heirs, made an agreement under seal by which Fluharty sold Conway certain timber, and said Fluharty by some agreement, whether written or oral does not appear, sold certain other timber to Henderson, and Henderson by writing sold same to Conway. It is claimed by Conway that Simeon W. Fluharty acted as agent for his mother and all the heirs; but he says himself that he had a power of attorney only from his mother, and it was not signed by his coparceners; nor does he show that they verbally authorized him to sell the timber, and for this reason we can safely say that he had no power to sell timber beyond his own right, as his mother as widow could not sell the timber. And, moreover, the agreement in nowise speaks or indicates that Simeon acted for anybody but himself, since it is only in his own name, and has no word indicating it to be an act of agency for any one, as it must have by common law. (2 Minor Ins. 730), and Code, chapter 71, section 3. If there was any sale of timber to Conway and Henderson it was oral to Conway, except Simeon Fluharty's fractional heir's interest, and entirely oral, as to Henderson so far as appears. What the effect of such oral contract? This presents the question: Can trees growing on land be sold without a writing?

Scarcely a legal question on which there has been more elaborate discussion and more differing opinion and decision. Refined distinction have been drawn, some seeming unsubstantial, as the one that if the agreement contemplates present severance from the land, it is valid; whereas, if that is not apparent, but the timber is to stand an indefinite time and thus the soil is to be used for its nutriment or sustenance, the contract is not valid. It seems to me that the question turns on the nature of the trees as being a part of the realty, and not on when they are to be severed. Our statute of frauds and perjuries in the sixth clause of chapter 98, of the Code, says that no action shall lie to charge any one "upon any contract for the sale of real estate, or the lease thereof for more than a year," unless the contract be in writing; whereas the English act requires a writing for a contract for the sale of lands "or any interest in or concerning them," and the omission from our act of these words has been thought to bear on the question, and make an oral contract good under our act, though not under the English act. 2 Lomax Dig. ch. 3, p. 31, note. I see no force in this distinction. If trees are part of the land, they are "land" under this act, not an interest, not an entity to be separated in law from the soil, when we are talking about sales of land. There is no case in the West Virginia reports adjudicating this question, and none in Virginia until 1895. Amid all the conflicting decisions we must see and choose our way. I think the sound side is that a sale of growing annual crops planted by man called *fructus industriales* are saleable by word of mouth (*Kerr* v. *Hill,* 27 W. Va. 576) ; but those things growing in the soil called *prima vestura,* or *fructus naturales,* like trees are not saleable, except by writing, because they are of the very substance of the *solum* or soil by the implantation of nature; they are "land" under the statute. I think Judge Riley in *Stuart* v. *Pennis,* 91 Va. 688, makes it clear that the decision in that case is sound, that is, that a sale of growing trees is a sale of real estate, not chattels, and will be specifically enforced in equity. He said: "Land includes everything belonging or attached to it, above or below the surface. It includes the minerals buried in its depths, or which crop out of its surface. It equally includes the woods and trees growing upon it. Rooted and standing in the soil, and drawing their support from it, they are regarded as an integral part of the land, just as are the coal, the iron, the gypsum, and the building

stone which enter so largely into the business of commerce. At-
tached to the soil, they pass with the land as part of it. A con-
veyance of the land carries with it to the grantee the right to the
forest and trees growing upon it. In the dealings of men grow-
ing timber is ever regarded as part of the realty. Upon the
death of the ancestor they pass with it to his devisee, or descend
with it to his heirs, and not to his executor or administrator.
They are not treated as personalty. They are not subject to levy
and sale under execution. And so, upon principle, sound reason
and authority, we are of opinion that they constitute an interest
in, or part of, the land." He says the great weight of authority
is that way. I think so, especially the modern cases. Bishop on
Contracts, ss. 396, 1294, says this is the true holding. So also
Washb. R. Prop. 366, and Benjamin, Sales, s. 126. Many cases
so decide. *Hirth* v. *Graham*, 50 Ohio St. 57, 40 Am. St. R. 641
and citations; *Walton* v. *Lowery*, 74 Miss. 484; *Keystone L. Co.*
v. *Kolman*, 59 Am. St. R. 905; Brown, Stat. Frauds, s. 235. It
is proper to say that though an oral agreement is not enforceable
by action at law or suit in equity, but until executed is revoca-
ble by the parties at will, yet it is a license to enter upon the land
and take the timber, and exempts the party from an action of
trespass, and the moment the tree is severed from the soil it
ceases to be realty, is converted into a chattel, and belongs to
the purchaser. "A sale of growing timber by parol is a license,
and authorizes an entry upon the land, but the same is revocable
at the will of the seller." *Walton* v. *Lowery*, 74 Miss. 484. "It
vests no title in the licensee prior to the severance of the tim-
ber." *Keystone L. Co.* v. *Kolman*, 59 Am. St. R. 905. So
Bishop on Contracts s. 396. "Such licenses are in nature mere
personal privileges not assignable by the licensee, not inuring
to his representatives, not binding upon the assignees or heirs of
the estate in respect of which they are granted. So long as they
remain unexecuted they are revocable by the grantor; and they
are *ipso facto* revoked upon the conveyance of his estate, and
expire with the performance of the act or acts which they author-
ize to be done." Brown, Stat. Frauds, s. 22. From these prin-
ciples it results that the cut timber would belong to Conway, if
there were an oral contract, but not the standing timber, save
Simeon Fluharty's share under his written agreement with Con-
way, but not under his oral agreement with Henderson. Con-
way is entitled only to Simeon's one-seventh share of the stand-

ing timber. Pending the litigation Mills bought the land carrying the standing timber. Until he made his purchase he had no right. His rights under this purchase pending the suits ought to have been introduced into the case by a cross bill in the suit of the Fluhartys against him, and by a supplemental bill in his suit against them. Story, Eq. Pl. ss. 393, 336; 1 Bart. Ch. Prac. 318, 351. This was not done. Its omission gives trouble. Could Mills get the benetfi of his purchase without such change in the pleadings? The answer of Conway alleged this purchase, thus confessed a fact which legally gave right to Mills to the standing timber. The decree dissolving the injunction of Mills allowed Conway and Henderson to go on cutting timber, which belonged to Mills by conveyance from the Fluhartys, their conveyance being a transfer of all their right, and a revocation of verbal license under law above given, and if it were not, it conferred on Mills as alienee power to revoke it as fully as could the Fluhartys themselves, and therefore the decree of dissolution *in toto* was erroneous.

How as to the latter decree giving Conway the value of the cut timber? It must stand. True, deeds from the Fluhartys which Mills presented to the commissioner when executing the reference show that they not only sold Mills the land, but also that cut timber; but whilst Conway's answer admitted the conveyance of the land, yet it did not exhibit the deeds or admit the conveyance of the cut timber, and these deeds not being in the case, and no pleading setting up their substance, we cannot say that by record Mills was, by sale by the Fluhartys' entitled to that cut timber. As there was no proof of any power to sell given Simeon W. Fluharty by the other heirs, their sale of this cut timber would give Mills their title to it; but the record did not show this at the time of the decree. Hence we must affirm the second decree.

We reverse the decree of 24th day of May, 1898, so far as its dissolution of the injunction granted John Mills applies to the timber still standing on the land in controversy when that injunction took effect, 6th of October, 1892, and perpetuate said injunction as to said then standing timber, except as to said Simeon W. Fluharty's one-seventh thereof, and we affirm the decree of the 15th day of June, 1899. Mills recovers costs of appeal.

*Reversed in part and affirmed in part.*