# CHARLESTON.

## GALLAGHER *v.* GALLAGHER.

Submitted January 21, 1888.    Decided February 18, 1888.

1. SPECIFIC PERFORMANCE—PAROL CONTRACT FOR SALE OF LAND— WHEN ENFORCED.

    In a suit by the purchaser for the specific execution of a parol contract for the sale of land the plaintiff must establish the contract alleged in his bill by a clear preponderance of evidence. If the evidence is conflicting, and it is not clear that a contract was in fact made, the court should dismiss the bill. (pp. 12, 13.)

2. SPECIFIC PERFORMANCE—PAROL CONTRACT FOR SALE OF LAND— WHEN ENFORCED.

    To entitle a purchaser to relief in such a case it must appear, *first,* that the contract is certain and definite in its terms; *second,* that the facts proved in part performance refer to, result from or were made in pursuance of the contract proved; and, *third,* that the contract has been so far executed that a refusal to complete it would operate as a fraud upon the purchaser, and place him in a situation in which he could not be adequately compensated in damages. (p. 13.)

3. SPECIFIC PERFORMANCE—PAROL CONTRACT FOR SALE OF LAND— WHEN ENFORCED.

    The payment of the purchase-money is not of itself such part performance as will take the case out of the statute of frauds. (p. 13.)

| | |
|---|---|
| 31 | 9 |
| 39 | 171 |
| 31 | 9 |
| 42 | 513 |
| 31 | 9 |
| 43 | 153 |
| 31 | 9 |
| 44 | 239 |
| 44 | 242 |
| 44 | 672 |
| 31 | 9 |
| 46 | 104 |
| 46 | 485 |
| 31 | 9 |
| 447 | 249 |
| 47 | 558 |
| 47 | 559 |
| 31 | 9 |
| 48 | 597 |
| 48 | 599 |
| 31 | 9 |
| 52 | 69 |
| 52 | 636 |
| 31 | 9 |
| 55 | 39 |
| 55 | 43 |
| 31 | 9 |
| d56 | 330 |
| 31 | 9 |
| f64 | 5 |
| 64 | 37 |

4. SPECIFIC PERFORMANCE—PAROL CONTRACT FOR SALE OF LAND—
WHEN ENFORCED.

In such case the plaintiff must show not only the terms of the
contract, but also such acts and conduct of the vendor, as a court
would hold to amount to a representation that he would not rely
on the statute to escape his contract, and also that in reliance upon
this representation the purchaser has either in performance or in
pursuance of his contract proceeded to alter his position so far as
to incur an unjust and unconscientious injury or loss, in case the
vendor is permitted to rely upon the statutory defence.   (p. 13.)

5. SPECIFIC PERFORMANCE—PAROL CONTRACT FOR SALE OF LAND—
WHEN ENFORCED.

Under some circumstances possession will of itself entitle the
purchaser to have the contract enforced; but in all cases in which
possession is relied on, it must be a notorious and exclusive posses-
sion, and one which was delivered or taken under the contract,
and so retained and continued.   (p. 14.)

6. SPECIFIC PERFORMANCE—PAROL CONTRACT FOR SALE OF LAND—
WHEN ENFORCED.

When the purchaser moves upon the land and remains there in
company with the vendor, and not as the ostensible and exclusive
proprietor, such possession, as an act of part performance, will not
entitle the purchaser to specific performance.   (p. 14.)

7. SPECIFIC PERFORMANCE—PAROL CONTRACT FOR SALE OF LAND—
WHEN ENFORCED.

While it is strong confirmatory evidence of the right of the pur-
chaser, where it is shown that he has upon the faith of his contract
and with the knowledge of the vendor expended money in making
permanent improvements upon the land, still, if he has been fully
compensated by the use of the land or otherwise for his improve-
ments, this alone will not be such part performance as will entitle
him to specific execution.   (p. 15.)

8. SPECIFIC PERFORMANCE.

The improvements must be beneficial to the estate, and of a per-
manent character.   Mere repairs confer no rights upon the pur-
chaser.   (p. 15.)

*J. W. English* for appellant.

*J. B. Menager* and *W. H. Tomlinson* for appellee.

SNYDER, JUDGE :

Suit in equity brought in the Circuit Court of Mason county
in July, 1883, by Michael Gallagher against Hugh Gallagher

and others to compel the specific performance of an alleged parol contract for the sale of real estate. The defendants answered the bill. Depositions and exhibits were filed on which the cause was heard, and on February 17, 1885, the court entered a final decree ordering the specific execution of said contract, and directing a conveyance of the real estate by the defendant, Hugh Gallagher, to the plaintiff. From this decree said defendant has obtained this appeal.

The plaintiff's bill alleges that some time in the year 1878 the appellant, Hugh Gallagher, who is the father of the plaintiff, purchased a house and lot in Hartford City, Mason county, which is fully described, from the Hartford City Coal & Salt Co., and paid a part of the purchase money thereon, but finding he would be unable to pay the balance, agreed with the plaintiff that if he would pay said balance of the purchase-money the deed therefor should be made by said company to him, the plaintiff, thereby selling his equitable interest in said property to the plaintiff; that in pursuance of said agreement the plaintiff took possession of the property, made valuable improvements upon it, and paid to said company about $500 in full of the balance due on the original purchase; that said company is ready and willing to make the plaintiff a deed for the property, but the appellant refuses to permit it to do so.

The appellant, in his answer, positively denies that he ever sold said property to the plaintiff, or made any such contract with him as is alleged in the bill; he denies that the plaintiff was ever put in possession of the property, or that he made any improvements thereon; he also denies that the plaintiff ever had any interest, legal or equitable, in the property, or that he paid $500 on the purchase thereof.

The proofs in the cause show that in the year 1859 or 1860 the appellant purchased from said company a part of the lot in controversy at the price of $100; that he was put in possession of the same, and built a house and made other improvements thereon, and has lived in said house ever since; that soon after the first purchase he agreed to purchase the residue of the lot, constituting the whole of lots Nos. 23 and 24 of said town, at the price also of $100, making $200 for the whole; that before the year 1878 he had paid in full for said first purchase,

but still owed the price of the second purchase with its accumulated interest; that in the fall of 1878, about the time his son, the plaintiff, became of age, he made an arrangement with the president of said company, by which his son should work for it, and that the balance due on the property was to be taken out of the son's wages. The books of the company show that from March, 1879, to October, 1880, the plaintiff's wages are credited with the aggregate sum of $300, on account of this property. At the time these wages were earned the father and son were both living together in the house on the property as they had been before and after the alleged purchase by the son was made. The father was engaged in cultivating some rented land, raising corn and hogs, and butchering.

About these facts there is no room for controversy; but there is a direct and irreconcilable conflict between the testimony of the plaintiff and appellant as to whether or not there ever was any contract or agreement for the sale of the property to the plaintiff, and also in regard to the arrangement by which the wages of the plaintiff were used to pay the balance due on the property. The appellant testifies positively that no such contract was ever made, and in regard to the use of the plaintiff's wages to pay the balance due from him on the property, he testifies that it was agreed between him and the plaintiff that the latter should work for the company and pay the debt on the property, and he, the appellant, would board and pay him an equal amount in money out of the sale of his hogs and other means, and that he did so pay him the full amount of the wages so used and much more; and there is other evidence to prove that he sold hogs at different times and received money therefor to an amount more than sufficient to repay the plaintiff the sum taken from his wages to pay on the property, and that a large part of this money was in fact paid over to the plaintiff. On the other hand, the son testifies that there was a positive contract that the property was to be conveyed to him, and that the hogs which his father sold and the proceeds of which were paid to him were his own hogs and not his father's.

On these controverted matters there is little or no corroborating testimony, though the attendant facts and circumstances tend to sustain the father rather than the son. But I

do not deem it necessary to refer to these, because in a suit of this character, unless the contract stated in the bill is established by a clear preponderance of evidence, the court will not enforce it. If the evidence is conflicting, and it is not clear that a contract was in fact made, a bill for specific performance will be dismissed. *Haskin* v. *Insurance Co.*, 78 Va. 700; *Graham* v. *Hendren*, 5 Munf. 185; *Baldenberg* v. *Warden*, 14 W. Va. 397.

But if it were admitted not only that there was a contract of sale, but also that the purchaser had paid the purchase-money, still the plaintiff would not be entitled to relief in this suit. The principles, upon which courts of equity will avoid the statute of frauds on the ground of part performance of a parol contract for the sale of land, are now as well settled as any of the acknowledged doctrines of equity jurisprudence. To entitle a party to relief in such cases it must appear—*first*, that the contract relied on is certain and definite in its terms; *second*, the acts proved in part performance must refer to, result from or be made in pursuance of, the contract proved; and, *third*, the contract must have been so far executed that a refusal of full execution would operate a fraud upon the purchaser, and place him in a situation which does not lie in compensation. *Campbell* v. *Fetterman*, 20 W. Va. 398, 304; *Wright* v. *Puckett*, 22 Gratt. 370; 1 Lead. Cas. Eq. (2d Amer. Ed.) top pp. 557–574. It is now settled that the payment by the purchaser to the vendor of the whole or a part, whether substantial or unsubstantial, of the purchase-money is not an act of part performance which will take the parol contract out of the statute. *Jackson* v. *Cutright*, 5 Munf. 308; Fry. Spec. Perf. § 403; 2 Story Eq. Jur. 760.

The fraud, which will entitle the purchaser to a specific performance, is that which consists in setting up the statute against the performance, after the purchaser has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury

and loss. In such case the vendor is held by force of his acts or silent acquiescence, which have misled the purchaser to his harm, to be estopped from setting up the statute of frauds; therefore, a purchaser seeking the performance of such agreement must be able to show clearly not only the terms of the contract, but also such acts and conduct of the vendor as a court would hold to amount to a representation that he proposed to stand by his agreement, and not avail himself of the statute to escape its performance; and also that the purchaser, in reliance on this representation, has proceeded, either in performance or pursuance of this contract, to so far alter his position as to incur "an unjust and unconscientious injury and loss," in case the vendor is permitted after all to rely upon the statutory defence. Browne, St. Frauds, § 457*a*; *Glass* v. *Hulbert*, 102 Mass. 34; *Swain* v. *Seamens*, 9 Wall. 254. From this it is apparent that the payment of the purchase-money is not such part performance as would entitle the purchaser to specific execution, because the money may be recovered back at law, and the parties be thus restored to their original position; and therefore it does not put the purchaser in such a position that he will suffer "an unjustice and unconscientious injury and loss" if the contract is not enforced. 2 Story Eq. Jur. § 761.

Possession is an important element in the enforcement of such contracts. Possession alone will, under some circumstances, entitle the purchaser to a decree for specific performance. *Harris* v. *Crenshaw*, 3 Rand. 14; 2 Story, Eq. Jur. § 761. In all cases in which possession, either as delivered by the vendor, or assumed by the purchaser, is relied upon, it must appear to be a notorious and exclusive possession of the land claimed, and to have been delivered or assumed in pursuance of the contract alleged, and so retained or continued. Where the purchaser moves upon the premises and remains there in company with the previous occupant, not as the ostensible and exclusive proprietor, or where the metes and bounds of the land alleged to be purchased are not fixed and recognized and the purchaser occupies it in common with adjacent land of his own, such possession, as an act of part performance, will not be sufficient to entitle the purchaser to specific performance. *Fry* v. *Shepler*, 7 Pa. St. 91; *Haslet*

v. *Haslet*, 6 Watts, 464; Browne, St. Frauds, §§ 467–486.

It is always regarded as strongly confirmatory of the rights of a purchaser seeking the specific execution of a verbal contract for an estate in land that he has proceeded, upon the faith of the contract and with a knowledge of the vendor, to expend money in the improvement of the land. But the improvements relied upon must be of a character permanently beneficial to the land, and involving a sacrifice to the purchaser who made them. Although the improvements are required to be beneficial to the land, a court of equity will not inquire whether the expenditures have been judiciously or injudiciously made, or whether the money has been well or ill laid out. *Davenport* v. *Mason*, 15 Mass. 85; *Whitehead* v. *Brockhurst*, 1 Brown Ch'y 417. It must appear, however, that the loss of his improvements would be a sacrifice to the purchaser. If, therefore, he had gained more by the possession and use of the land than he has lost by his improvements, or if he has been in fact fully compensated for the improvements, they will not be available to him as a ground for specific execution. Browne St. Frauds, §§ 487–491.

In the case at bar, the plaintiff has wholly failed to prove either that he ever had the exclusive possession of the property in controversy, or that he made any permanent improvements upon it. In respect to these matters, the plaintiff, in answer to the question, "State how the defendant, Hugh Gallagher, was living there after you took possession of the property," testifies, "we were both living there together on what I made until 1 became of age. After I became of age, the contract for the land was made, and we have lived in the same condition ever since up to October 10, 1882. I went off and boarded for a couple of months before I was married, and then I went there to live. He lived some three or four months with us, and then to himself, in the same house." And in reply to the question as to what improvements he had put upon the property since he took possession, the plaintiff testifies as follows: "I paid for the stripping the doors and for locks for same and built a well frame on the premises and put a bucket in the well or to a rope." This is the only evidence in the record in regard to the character of the possession of the property by the plain-

tiff and of the improvements made thereon by him. It clearly shows that the appellant never surrendered the possession, and that the plaintiff never had the exclusive possession as purchaser or otherwise. The alleged improvements were merely repairs of the most trifling character and not improvements at all.

According to the principles herein before announced and the authorities cited, the plaintiff has had no such possession of the property nor had he made such improvements thereon as would entitle him to a specific execution of his alleged contract of purchase, even if he had clearly shown, as he has not, that a contract of sale had been actually made, and in pursuance of it he had paid the purchase-money in full, for the reason that he has an ample remedy at law to recover back his purchase-money, and thus he could be fully compensated and restored to his original position. I am therefore of opinion that the decree of the Circuit Court should be reversed, and the plaintiff's bill dismissed.

REVERSED.