# CHARLESTON.

ELBON *v.* ADAMS *et al.*

Submitted September 10, 1897.—Decided December 8, 1897.

CONTRACTS—*Statute of Frauds.*

Appeal from Circuit Court, Tucker County.

Bill by H. D. Elbon against John J. Adams and C. W. Minear. From a decree for plaintiff, defendants appeal.
*Affirmed by divided Court.*

W. B. MAXWELL, for appellants.

A. M. CUNNINGHAM, for appellee.

DENT JUDGE:

John J. Adams and C. W. Minear appeal from a decree of the circuit court of Tucker county rendered against them enforcing specific performance of a contract at the suit of H. D. Elbon. The facts are as follows: About the 24th day of August, 1896, H. D. Elbon, through his father, Joseph H. Elbon, entered into a verbal contract for the purchase of a small tract of land, with C. W. Minear and William M. Clayton, acting for himself and as agent of John J. Adams, holding title to one undivided moiety of such land. The contract was reduced to writing, and was signed by Minear, but not by Adams, he not being present. It is as follows (together with notice to give possession):

"Parsons, W. Va., August 24th, 1896.   This agreement, made this the 24th day of August, 1896, between John J. Adams, and C. W. Minear, parties of the first part, and H. D. Elbon, party of the second part: The parties of the first part have this day agreed to sell to the party of the second part a certain tract of land of five acres, more or less, in or near the town of Hulings, that was purchased of L. D. and P. B. Goff, for the sum of one hundred dollars, to be paid on the first day of October, 1896, and the further consideration of three notes executed by W. H. Watts, payable to H. D. Elbon, dated the 11th day of April, 1896, and due in two, three and four years, respectively, each for the sum of one hundred and fifty dollars, being land notes for the purchase of land in Barbour county; the said parties of the first part to give possession as soon as the cash payment is made, and to make general warranty deed for land, and to retain a vendor's lien for the unpaid purchase money.   Given under our hands this 24th day of August, 1896, C. W. Minear.   [Seal] H. D. Elbon.   [Seal]."

"Parsons, Aug. 24th, 1896.   Mr. I. D. Junkins—Dear Sir:   Having sold the land you had rented to H. D. Elbon, you will please let him have posession of same.   Will arrange with you in regard to rent as soon as I see you. Yours, truly, C. W. Minear."

Elbon fully complied with the contract, with the exception of the payment of the one hundred dollars payable on the 1st day of October, 1896, and was placed in possession of the property by Minear, and began at once to improve the same, and is still in possession thereof.   After the time expired for the payment of the one thousand dollars, Elbon paid a sixteen dollars school order thereon, and was granted a short extension of time as to the residue.   A few days after the extension expired, he tendered the defendants the residue of the one thousand dollars, with interest, to wit, eighty-five dollars, and demanded a deed.   The defendants refused to make it, claiming the contract was merely an option and had expired.   Plaintiff then brought suit for specific performance, and defendants resisted the same because the contract was a mere forfeited option, and for the further pleaded reason that so far as Adams

was concerned, it was not reduced to writing, and signed by him or his agent, and, being an entirety was therefore not enforceable against either of the defendants. The verbal contract as made with Cayton, the agent of Adams, is clearly shown by the evidence to be identical with the contract as reduced to writing by Minear. This, on its face, is a contract of sale, and not a mere option, and must be so treated. Minear's evidence is not taken, and hence it must be presumed that it would, if taken, support the plaintiff's contention in all respects in which it conflicted with that of the defendants. *Union Trust Co.* v. *McClellan*, 40 W. Va., 405, (21 S. E. 1025). The sole way of escape for the defendants, if at all, must be through the statute of frauds. In Browne on the Statute of Frauds (page 570, § 448) it is said "that where an agreement has been so far executed by one party, with the tacit encouragement of the other, relying on his fulfillment of it, that for the latter to repudiate it, and shelter himself under the provisions of the statute, would amount to a fraud upon the former, that fraud will be defeated by compelling him to carry out the agreement." Possession alone is held to be sufficient to avoid the statute. *Gallagher* v. *Gallagher*, 31 W. Va., 9, (5 S. E. 297). There is no question in this case that possession was delivered to the plaintiff under and by virtue of the contract by Minear, one of the joint contractors, and by virtue of this delivery it has continued to remain in the plaintiff, openly, notoriously, and exclusively. Cayton and Adams both deny all knowledge of such possession or the delivery thereof. Yet they certainly must have permitted their joint owner, Minear, to hold and control possession thereof, and, in absence of any evidence to the contrary, it must be presumed that he was acting in their interest and with their authority. While Adams held the legal title, it appears from the evidence that Cayton was not only acting as his agent, but was the true owner of the property. At least, such is the impression made by their conduct and language, while the answer insists that Adams is the owner. It is a principle of law that the acts of one joint tenant in relation to the joint property is the act of and for the benefit of all his co-tenants, unless specially shown or stipulated to the

contrary or repudiated. If Adams did not know that plaintiff was placed in possession, it was because his joint tenant failed to inform him or he neglected to inquire. That Minear was restricted in his control or possession of the property is not evident from anything that appears in the case. The possession of the plaintiff, therefore, was legal, exclusive, and under the contract. Minear in writing directed their tenant in possession to turn over the possession to plaintiff by reason of this purchase. The authority of Minear so to do is not denied or questioned, except by the general denial of Adams and Cayton that they put the plaintiff in possession. The contract in this case is regarded as an entirety by all the parties; that is that it cannot be enforced against Minear if it cannot be enforced against Adams. In other words, if Adams is permitted to relieve himself from the performance of his verbal contract, this operates to relieve Minear from his written contract. If the two contracts were separable, no such trouble would arise, as each could be separately compelled to perform his part or be relieved therefrom. The statute (Code, c. 98, s. 1) was enacted to prevent false swearing and perjury, and reads: "No action shall be brought in any of the following cases: * * * Sixthly. Upon any contract for the sale of real estate, or the lease thereof, for more than a year, * * * unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent." This plainly means that an alleged verbal contract, not performed in whole or in part, shall be considered insufficient to support a suit for specific performance. The contract itself is not made void, but, while legally insufficient, it is just as binding morally as if reduced to writing. In this case it was reduced to writing, and signed by one of the co-vendors, and possession of the property delivered by virtue thereof to the vendee. It would be inequitable to allow these defendants to escape performance of their contract for the sole reason that one of them had failed to sign the agreement as reduced to writing, not because it did not state the contract correctly, but simply because it was not presented for his signature,

This certainly presents a plain case for the interposition of equity to prevent, by the enforcement of the contract, the very kind of fraud the statute was intended to prevent, to wit, the setting up of uncertain demands, as these defendants are endeavoring to do in their present defense. When the tender was made, Adams examined the written contract, and the notice to the tenant to turn over possession to Elbon, and made no objection thereto, but apparently acquiesced therein, but stated he was not interested in the property, but would advise Minear and Cayton to comply with the same. This is certainly an acquiescence on his part, at least as to the possession. Their claim is that the verbal contract was merely optional, and they give this as an excuse for not performing it, yet, except merely inferentially, they do not deny that the contract as reduced to writing and executed by one of them is in exact accordance in all respects with the verbal contract; and it is apparent from the evidence that the real reason for their conduct is the probable increase in value of the property after they contracted to sell it, owing to certain developments taking place in the neighborhood thereof. The circuit court, therefore, committed no error in decreeing specific performance.

Appellants further object to the decree for the reason that it fails to provide for the retention of a vendor's lien in accordance with the contract. The decree is silent on this subject, and the presumption must be that the deed was intended to be executed according to the contract sought to be enforced. For how could it be otherwise? It is clear that it was the intention of the parties to secure the payment of the Watts notes, and that vendors are entitled to retain a lien for this purpose, unless they agree to take such notes without recourse, which is nowhere indicated. With such understood amendment to the decree, to avoid controversy it is affirmed.

McWhorter, Judge, concurs.

Brannon, Judge:

I cannot concur with Judge Dent in this case. I am an ardent believer in the statute of frauds, and think that, un-

der the doctrine of "part performance," that wise statute has been frittered away and lost much of its efficacy. Fickle and uncertain memory and intentional perjury, the evils intended to be guarded against by this beneficent statute, have, in a large measure, rendered it vain and nugatory. I would not carry the repeal of this statute by the legislation enacted by the courts of equity, entitled "part performance," an inch further than it has gone, and I would not apply it except in cases where the elements which have been demanded under it are fully and clearly proven. In this case, to bind Adams, only delivery of possession can be relied upon, as neither he nor his agent signed any writing. Adams never delivered possession ; neither did his agent. This is clear, and ends the plaintiff's case as to Adams. On this ground I dissent. Without delivery of possession, an oral sale of land is nothing. But it is said Minear wrote a letter to the man in possession to deliver possession to Elbon, and that, Minear being a joint tenant with Adams, Adams is bound. This is fallacious. A joint tenant's act, going to benefit or preserve the estate, inures to his co-tenant's benefit, but his acts cannot destroy his co-tenant. Freeman on Co-Tenancy and Partition (section 196) says : "The interest of one co-tenant cannot be diminished, varied, or otherwise prejudiced or affected by a conveyance made by another cotenant." See *Boggess* v. *Meredith,* 16 W. Va., 1. Can one of two owners sell his fellow's land? Surely not. Can he bind him by any act necessary in law to bind him to his prejudice ? This sale was void as to Adams without delivery of possession. That act is indispensable. *Gallagher* v. *Gallagher,* 31 W. Va., 9, (5 S. E. 297). But JUDGE DENT holds that Minear's act of delivery of possession binds Adams,—takes away his land. I do not think so. If he could not pass his right by deed, for want of authority, neither can he do so by the act of delivery of possession. How can Minear's failure to inform Adams that he had delivered possession stand in place of Adams' act of delivery ? His mere silence binds him. It is of no force to say that under this statute a man may repudiate an honest contract. The legislature, for wise policy, has allowed him to do so. I would reverse the decree, send the

case back, to be dismissed as to Adams, and enforced as to Minear's moiety ; if Elbon elects to take only his half.

ENGLISH, PRESIDENT, concurs.

*Affirmed.*