BRACKEN et al. v. CHADBURN et al.

No. 3394. Decided December 30, 1919. (185 Pac. 1021.)

1. APPEAL AND ERROR—IN EQUITY SUIT SUPREME COURT HAS DUTY TO REVIEW EVIDENCE. In an equity proceeding, as for decree adjudging plaintiffs to be owners of a water filing, quieting title thereto as against defendants, and annulling an alleged sale or assignment thereof, it is the duty of the Supreme Court to review the evidence and determine whether the findings of

the lower court are supported by the weight of the testimony. (Page 435.)

2.   FRAUDS, STATUTE OF—RIGHT OF ALL CONCERNED TO WATER FILING MADE BY SINGLE PARTY UNDER ORAL AGREEMENT.  Where plaintiffs complied with their part of an oral agreement as to the construction of an irrigation canal, paid over their pro rata share of the cost of a water filing made by a defendant, and did their full duty in constructing the canal, took their water through it, and, by a water master elected annually, in which election defendant participated, distributed to him his share of the water, as well as the shares of the other owners, plaintiffs are entitled to a decree adjudging them to be owners of the water filing made in the state engineer's office by defendant alone, and to decree quieting title thereto against defendant and his successors; the statute of frauds not being invocable to defeat plaintiffs' rights.[1]   (Page 436.)

3.   WATERS AND WATER COURSES—EVIDENCE SUPPORTING JUDGMENT DETERMINING OWNERSHIP OF WATER FILING.  In suit for decree adjudging plaintiffs to be the owners of a water filing made by an individual defendant, and quieting title thereto against him and his successor, the corporate defendant, also annulling the individual defendant's assignment of the filing to the corporate defendant, evidence *held* to support finding that the corporate defendant had notice of plaintiffs' interest in the water filing.[2]   (Page 437.)

4.   WATERS AND WATER COURSES—ASSIGNEE OF WATER FILING WITH NOTICE TOOK SUBJECT TO ADVERSE RIGHTS.  A reclamation company, which accepted assignment of a water filing with notice of an adverse interest therein, took subject to all the equities and rights of the adverse parties.  (Page 437.)

Appeal from District Court of Washington County, Fifth District; *H. N. Hayes*, Judge.

Action by Wallace Bracken and others against James W. Chadburn and the New Castle Reclamation Company.

From judgment for plaintiffs, defendants appeal.

AFFIRMED.

[1] *Lynch* v. *Coviglio*, 17 Utah, 106, 53 Pac. 983.

[2] *Toland* v. *Corcy*, 6 Utah, 392, 24 Pac. 190; *Live Stock Co.* v. *Dixon*, 10 Utah, 334, 37 Pac. 573; *Shafer* v. *Killpack*, 53 Utah, 468, 173 Pac. 948.

*Bagley & Ashton,* of Salt Lake City, and *E. H. Ryan,* of Cedar City, for appellants.

*Hancock & Barnes,* of Salt Lake City, and *Geo. R. Lund,* of St. George, for respondents.

GIDEON, J.

The plaintiffs asked for a decree adjudging them to be the owners of a certain water filing made in the state engineer's office by defendant J. W. Chadburn, known as filing No. 1663; also for a decree quieting title thereto against the defendants and annulling an alleged sale or assignment of such filing by the defendant Chadburn to his codefendant, the New Castle Reclamation Company. Denial of any interest in the said water or water filing in the plaintiffs was made by the defendants. The further defense is interposed that the oral contract set out in the complaint is within the statute of frauds, and is therefore not enforceable. Plaintiffs had judgment. Defendants appeal.

The application was for ten second feet of the high or flood waters of Santa Clara river. It appears from the record that Santa Clara river runs through Washington county in this state in a southwesterly direction. The stream has its source in the mountains. During the early spring a large volume of flood or high waters from the melting snows runs down the stream. The lands along the entire course of the stream are barren and unproductive without irrigation. In the valleys along the stream are located small communities engaged chiefly in farming and stock raising. Near the source of the stream is a village known as Pine Valley. Some eight or ten miles down the river from Pine Valley is a small village known as Central, also referred to in the record as Eight-Mile Flat. Some of the plaintiffs, at the time of beginning the construction of the canal out of which this controversy arose, resided in Pine Valley and owned lands, and used for irrigation thereon water from that river. The water so used was known as primary water, and was superior to the rights in-

volved in the filing made by Chadburn. In the year 1907, or immediately prior thereto, the plaintiffs and their predecessors in interest began jointly the construction of a canal having its diversion point on the said river some two or three miles up the stream from the town of Central. The canal extends along the bench lands or foothills of the mountains some five or six miles and was constructed to carry water to the lands owned by plaintiffs. Those lands were, however, barren at the date of the construction of the canal. It is apparent that at the date mentioned plaintiffs intended to use the canal, at least partially, for diverting part of the primary water owned by them theretofore used in irrigating lands located in Pine Valley. In the month of November, 1907, Chadburn, in his own name, filed an application in the state engineer's office for the appropriation of ten second feet of the flood or high waters of the said Santa Clara river, and designated the place of diversion to be the same as the one selected by plaintiffs to divert water into their canal, and also described certain lands located in sections 10 and 11 as the lands to be irrigated. Both plaintiffs and defendant Chadburn were in possession of lands situated in those sections. Some months after filing this application protests were made by communities or irrigation districts located farther down the stream against the granting by the state engineer of any water right to Chadburn under his said application. It appears that the defendant Chadburn was not able to construct the canal to convey the water to the lands described in the application. Neither had he the necessary means to contest the protests filed against his application. Nor did he own or control the land to be irrigated. During 1907 and 1908 some negotiations were had, and an arrangement was consummated by which the plaintiffs and the defendant Chadburn as a company—and they designated themselves as the Central Canal Company— had prepared the necessary answers to the protests, and thereafter continued with the construction of the canal. It also seems that during that time the defendant Chadburn contributed his pro rata share of the expense and work in constructing the canal. The first water, as established by the

great weight of the evidence, was turned into the canal on or about January 1, 1908. During the years immediately following a relatively small amount of land was cleared of sagebrush and other growth, so that the same could be cultivated, and not very much water was carried through the canal. At that time sixteen men were interested in the canal. The undisputed testimony is that each of these sixteen men owned an undivided one-sixteenth interest in the canal and the water taken through the canal under the filing made by Chadburn. It is evident that other and additional water—that is, some of the primary water which prior to 1908 had been used on the lands in Pine Valley—was carried through this ditch, and used for irrigating lands belonging to the owners of that primary water, but the water taken through the ditch under the application was divided equally among the sixteen claimants. No written agreement by which the defendant Chadburn agreed to sell or assign this water right to the plaintiffs seems to have been made until 1912. The lower court found that in the early part of 1912, at a meeting called for that purpose, Chadburn requested that he be given or allowed additional water under the claim that he was not able to mature his crops with the water that he had been receiving. The court also found that at this meeting a new agreement was made between the parties, and that the agreement thus made was reduced to writing and signed by all of the parties there present, including the defendant Chadburn. The purport of the agreement was that, in consideration of the defendant Chadburn turning over to the plaintiffs his rights under the water filing, and upon the payment by him of an additional sum of money the water should be divided into seventeen equal parts, and that of those seventeen parts he and his brother were to have two. Thereafter the water was divided into seventeen parts, and defendant Chadburn and his brother received two-seventeenths. This state of affairs continued, and all of the parties received their pro rata share of water. The canal was enlarged from year to year until 1914, when the defendant Chadburn sold his interest in the canal and the land owned by him under it, and moved from the

neighborhood. Nothing further, apparently, was done or said by the defendant Chadburn until the early part of 1916, when he entered into an agreement with and made an assignment of the water filing to his codefendant, the New Castle Reclamation Company, a corporation.

The appellants contend: (1) The court's finding that there had been a completed transaction or sale of the defendant Chadburn's right in the water filing to these plaintiffs is not supported by, but is contrary to, the evidence; (2) there is insufficient evidence to support the court's finding that there was a written agreement made between defendant Chadburn and plaintiffs in 1912; .(3) the defendant, the New Castle Reclamation Company was an innocent purchaser, without notice, for a valuable consideration, and the court's finding that it took the assignment with notice of plaintiff's equity is not supported by the evidence.

This being a proceeding in equity, it is the duty of this court to review the evidence and determine whether the findings of the lower court are supported by the weight of the testimony.

Certain facts relating to the matters in controversy are not disputed, or are so firmly established by the evidence as to be admitted, and are here stated. Some agreement was had between the plaintiffs or their predecessors in interest and defendant Chadburn, by whose terms the water filing was to become the joint property of the sixteen landowners, including the defendant Chadburn. The plaintiffs paid to the defendant Chadburn their pro rata share of the initial cost of filing the application in the engineer's office. The plaintiffs and defendant Chadburn, with the assistance of one J. X. Gardner, employed for the purpose, in 1908, jointly prepared the answer made to the protests against allowing the filing. Every act of the defendant Chadburn from 1908 until 1916 spells but one thing, namely, that he recognized the joint ownership of the water filing between himself and the plaintiffs or their predecessors in interest. The canal was constructed by the joint labor of all. Each contributed proportionately, either in money or work, his share of the expense of construct-

ing, enlarging, and repairing the canal from year to year. All, including the defendant Chadburn, were given each year during the season of high water the amount of water in the canal represented by their pro rata interests.

Although the defendant Chadburn was present during the entire hearing in the district court, he gave no testimony in denial or explanation of the mass of testimony presented by plaintiffs to establish the facts as herein stated and as found by the lower court. He did precisely what might be expected of a man who would deliberately betray a trust reposed in him by his neighbors. He brought his wife into court, and had her testify in denial of certain statements made by plaintiffs' witnesses upon a matter immaterial to the main issue, and only with a view of discrediting one or two of plaintiffs' witnesses.

A court of equity can and should grant relief under the state of facts presented by this case. Whatever doubt there may be under the testimony respecting the written agreement or memorandum signed by the defendant Chadburn in 1912, there can be no doubt that the rights of the plaintiffs in the water filing and the water appropriated thereunder had been acquired long prior to that date. Plaintiffs had fully complied with their part of the agreement. They had paid their pro rata share of the cost of the filing, had done their full duty in constructing the canal, had taken their water through the canal, and a water master, elected annually, in which election the defendant Chadburn participated, distributed to him his pro rata share of the water, as well as the pro rata shares to the other owners. The plaintiffs had redeemed the barren, uncultivated lands, and, by means of the water taken through this canal had caused the valley to bring forth bounteous crops. They had constructed homes and other buildings upon the lands made habitable by the water from this canal. Where the lizard and the prairie dog had lived their wild unhampered lives the Shorthorn and the Berkshire now fatten upon alfalfa grown and matured by the water diverted through this canal and claimed by reason of the filing made by the defendant Chadburn.

The statute of frauds cannot be invoked to defeat plaintiffs' rights under a state of facts as shown by this record. Whatever may have been the various and devious interpretations given by the courts to Statute 29 Charles II, it has never been construed to be an instrument of fraud; and such would be the effect if the defendant Chadburn were permitted to successfully invoke it in this action.

The rule of law applicable to the state of facts as shown by this record is well stated in the following quotation taken from *Gallagher* v. *Gallagher*, 31 W. Va. 9, 13, 5 S. E. 297, 299, and adopted with approval in 36 Cyc. 644:

"The fraud which will entitle the purchaser to a specific performance is that which consists in setting up the statute against the performance after the purchaser has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case the vendor is held by force of his acts or silent acquiescence, which have misled the purchaser to his harm, to be estopped from setting up the statute of frauds."

Such was the holding of this court in *Lynch* v. *Coviglio,* 17 Utah, 106, 53 Pac. 983. See, also, *Park* v. *Park,* 45 Colo. 347, 101 Pac. 403; *McLure* v. *Koen,* 25 Colo. 284, 53 Pac. 1058; *Bree* v. *Wheeler,* 4 Cal. App. 109, 87 Pac. 255; Kinney, Irrigation, sections 999, 1520.

The third contention of appellants is without merit. The defendant New Castle Reclamation Company owns and operates a canal taking water from the Santa Clara     **3, 4** river some eight miles from the canal in controversy. The superintendent or agent of the company, at the time of the alleged purchase of the water rights from defendant Chadburn, was one J. X. Gardner, the same person employed to assist the plaintiffs and defendant Chadburn in the preparation of the answer made to the protests against granting the application in question in the year 1908. The plaintiffs were in the open and continuous possession of the canal and the right to use and control the water running through it

during the years from 1908 to 1916, the date of the alleged purchase. Moreover, it is undisputed by any evidence on the part of the defendants that in a conversation between counsel for plaintiffs and the secretary of the defendant New Castle Reclamation Company, had at Salt Lake City in February, 1916, the secretary was advised that the plaintiffs owned that water, and that the secretary's reply was:

"Well, we are not worrying about that; we understand fully the condition of that water down there, and we have some time ago entered into a contract with Chadburn to purchase it."

The court's finding that the New Castle Reclamation Company had notice of plaintiff's interest in that water filing is supported by the record. In fact, no other reasonable deduction could be made from the testimony. *Toland* v. *Corey,* 6 Utah, 392, 24 Pac. 190; *Live Stock Co.* v. *Dixon,* 10 Utah, 334, 37 Pac. 573; *Shafer* v. *Killpack,* 53 Utah 468, 173 Pac. 948. Having such notice, that company accepted the assignment subject to all the equities and rights of the plaintiffs. 1 Pomeroy Eq. Jr. (2d Ed.) section 688.

The judgment of the district court was clearly right. It, therefore should be, and it accordingly is, hereby affirmed. Respondents to recover costs.

CORFMAN, C. J., and FRICK, WEBER, and THURMAN, JJ., concur.