## CHARLESTON.

JOHN ALEXANDER GIBSON v. FRENCH STALNAKER.

Submitted February 9, 1921.    Decided February 15, 1921.

1. FRAUDS, STATUTE OF—*Sale of Growing Trees Must be in Writing.*

    Growing trees are part of the realty, and a sale of them, to be valid under the statute of frauds, must be in writing. (p. 713).

2. SAME—*Oral Sale of Growing Timber Unenforceable Except in So Far As Executed.*

    An oral sale of growing timber, in the absence of equitable considerations justifying removal of the bar of the statute, is unenforceable and revocable at the option of the vendor; but insofar as the contract has been executed, prior to revocation, by severance of the timber, the lumber so cut and removed belongs to the purchaser. (p. 716).

3. SAME—*Part Performance Must be Clearly Shown to Entitle Purchaser of Growing Timber to Relief.*

    To entitle a purchaser to relief under a parol sale of growing timber, within the statute of frauds, the right sought to be enforced or safeguarded must be clear and definite, and evidenced by such part performance as will justify a court of equity in deviating from the strict statutory bar. (p. 714).

4. SAME—*Payment of Purchase Money Not Part Performance As To Sale of Growing Timber.*

    The payment of purchase money is not of itself such part performance as will take the case out of the statute of frauds. (p. 712).

5.  SAME—*When Possession Sufficient to Constitute Part Perform-
    ance Stated.*

    Possession, in order to constitute part performance, must
    be taken under and by virtue of the contract, and must be refer-
    able solely to such contract. Possession that is not exclusive and
    does not indicate the existence of the contract or agreement
    sought to be enforced is not sufficient. (p. 715).

6.  SAME—*Defective Possession May Amount to Part Perform-
    ance in Connection with Improvements.*

    Possession which is defective in this regard may, when ac-
    companied by valuable and permanent improvements in re-
    liance on such contract, amount to part performance. (p. 716).

7.  SAME—*Slight and Temporary Improvements Insufficient to Aid
    Defective Possession As Part Performance.*

    Improvements that are merely temporary, of relatively
    slight value, and of little substantial benefit to the property,
    are not valuable improvements in this sense. (p. 716).

8.  SAME—*Second Valid Sale Held a Repudiation of Former In-
    valid Sale, So That Subsequent Purchaser May Invoke
    Statute.*

    When a vendor of property by a contract unenforceable be-
    cause of the statute of frauds makes a subsequent valid sale to
    a third person, he thereby repudiates and avoids the former
    contract, and the subsequent purchaser may invoke the statute
    for his own protection. (p. 716).

9.  SAME—*Notice of Unenforceable Contract Held Not to Avoid
    Subsequent Valid Purchase.*

    Notice, actual or constructive, of a contract which is un-
    enforceable under the statute of frauds, will not prevent the
    person having such notice from becoming a purchaser of the
    property from the original owner unencumbered by the in-
    valid contract. (p. 716).

Appeal from Circuit Court, Randolph County.

Suit by John Alexander Gibson against French Stalnaker for
an injunction. From a decree dissolving an injunction, plain-
tiff appeals.

*Reversed; injunction reinstated and perpetuated; remanded.*

*W. B. & E. L. Maxwell,* for appellants.
*A. M. Cunningham,* for appellee.

LYNCH, JUDGE:

Complaining of a decree dissolving an injunction theretofore awarded restraining defendant from cutting certain timber on plaintiff's lands, the latter seeks reversal of that order and reinstatement of the injunction. On May 24, 1918, plaintiff John Alexander Gibson by deed purchased from Virginia S. Gibson and her husband, John Alonzo Gibson, a tract of land containing about 220 acres, known as the Varner place, the right to the timber on said tract being the question now in dispute. About a quarter of a mile distant from the Varner tract and separated from it by a 400-acre farm, ownership of which is not disclosed by the record, is a second parcel known as the Parsons place, also owned by the grantors. Defendant Stalnaker, the son-in-law of Virginia S. and John Alonzo Gibson, claims to have purchased from them, by verbal contract, during the fall of 1916, all the timber on both tracts of land, for which he agreed to pay $1,500 in cash and in addition to cut therefrom and furnish to his grantors from 12,000 to 15,000 feet of lumber for their own use, they to pay some of the expenses connected with the latter. Stalnaker and his wife had formerly resided on the Varner tract, but about a year prior to entering into the alleged agreement they had moved onto the Parsons place, where he was engage in cutting and logging lumber for his father-in-law. It was while they were living on the latter tract that the verbal agreement of sale was entered into. Shortly thereafter defendant commenced cutting the timber on the Varner tract, and in the spring of 1917 they moved back into the house which they had formerly occupied on that tract. The cutting and logging continued thereafter without serious interruption and was in progress in May, 1918, when plaintiff purchased the tract.

The deed from the Gibsons to him makes no reference to the prior oral sale of the timber thereon to defendant, but it is admitted by plaintiff and established by abundant testimony that his grantors informed him thereof at the time of or prior to the date of his purchase. He claims, however, that they assured him the agreement of sale expressly excluded the locust timber on the tract, which is sufficient to furnish posts to be

used in fencing the land, and for which purpose plaintiff now desires to use it. The Gibsons support him in this statement, but defendant and several witnesses introduced by him testify that it included all the timber on both tracts, irrespective of kind or quality.

Defendant continued to remove the timber from the Varner tract until August, 1918, when, owing to an extremely dry summer and the resulting inability to obtain water to run his mill. he removed his plant from that tract to another where operating conditions were more favorable. Before leaving, however, he notified plaintiff of his intention to return and complete the removal of the timber on that tract when conditions should improve.

Up to this time defendant had not cut any of the locust timber on either parcel, a fact tending to support plaintiff's construction and understanding of the oral agreement, and, indeed, not until receipt of a letter dated November 11, 1918, did plaintiff know that Stalnaker was asserting any claim to it. The following spring, when defendant was about to return to the Varner tract to cut what little timber remained, plaintiff filed a bill in equity praying that an injunction should issue to restrain him from cutting and removing any of the locust trees, but expressing a willingness that he should remove all other kinds, upon the giving of a bond conditioned to protect plaintiff against injuries to his farm and stock resulting from defendant's operations. A preliminary injunction was awarded by the court, but later was dissolved upon final hearing of the cause.

We deem it unnecessary to review the conflicting testimony with regard to the inclusion of the locust timber within the terms of the oral sale to Stalnaker, for under either construction the agreement is unenforceable. Growing trees are part of the realty on which they stand, and a sale of them must be in writing under the 6th clause of the statute of frauds, found in chapter 98 of the Code. *Fluharty* v. *Mills,* 49 W. Va. 446; *Brown* v. *Gray,* 68 W. Va. 555; 2 Page on Contracts § 1276. There is no dispute as to this principle of law, but defendant contends that there has been such performance of the oral agreement as to remove it from the terms of the statute. The

consideration promised by him has been almost, if not wholly, paid. He was permitted to enter into possession of the Varner tract, and in reliance upon the agreement constructed a mill and proceeded to cut the timber. Down to the date of cessation of work in August, 1918, he had removed about 500,000 feet of timber from the tract, leaving thereon yet to be cut from 50,000 to 75,000 feet, other than locust.

The statute of frauds was founded in wisdom and sound policy. Its main purpose was to prevent the setting up of pretended agreements and supporting them by perjured testimony. The importance of recording in written form contracts affecting real estate and interests therein, as well as those relating to other forms of property, is emphasized by the frequency with which valuable rights of that character are lost as a result of misunderstanding, uncertainty, mistake, and unprincipled and vicious conduct, when the only evidence available to establish and support such rights consists of oral testimony. The wisdom of any departure or deviation from the strict rule expressed by the statute has frequently been questioned, but courts of equity, nevertheless, at times depart therefrom in attempts to do justice between litigants, in order that a law designed to prevent fraud shall not itself become an instrument of fraud. *Wright* v. *Pucket,* 22 Gratt. 370.

The first and most essential prerequisite justifying and warranting such deviation is that the terms of the alleged agreement be clearly proven. *Gallagher* v. *Gallagher,* 31 W. Va. 9; *Smith* v. *Peterson,* 71 W. Va. 364. The right sought to be enforced or safeguarded must be clear and certain. *Meadows* v. *Meadows,* 60 W. Va. 34. Such is not the state of the testimony with regard to the locust timber on the Varner tract. The conflict is irreconcilable and it is difficult to say that a preponderance favors either contention, though it must be recognized that the failure of defendant to cut any locust timber during the entire period he was engaged at work on the tract tends strongly to support the position of plaintiff and the Gibsons in that regard. In other words, the uncertainty of the agreement is such as to warrant a court of equity in declining to depart from the statute by way of enforcing defendant's claim to the locust timber.

Of course, the mere payment of the purchase money by the vendee is not sufficient part performance to take the case outside the statute. *Gallagher* v. *Gallagher,* cited;; *Summers* v. *Hively,* 78 W. Va. 53. Nor are the taking of possession by the vendee and his construction of a mill on the premises sufficient of themselves in that regard. Possession and other acts relied on as constituting part performance must be taken under and by virtue of the contract and referable solely to the existence of such an agreement. *Gallagher* v. *Gallagher,* cited; 2 Page on Contracts, §§ 1381-1383. Defendant's intimate family relations with the Gibsons at that time presuppose a wide· latitude of privileged access to their lands. He and his wife resided on the Varner tract until they moved to the Parsons place to log lumber· for the latter's parents, and a year . later, after making the oral agreement of sale, they returned to the Varner place to cut and remove the timber thereon under their contract. The timber thus verbally sold covers both parcels, both owned by the Gibsons, one of which defendant already was in possession of, and had been in possession of the other only a year before. Indeed, the ease of access and communication between the two, and defendant's position in the family as son-in-law, make his reentry upon the Varner tract under the oral agreement of 1916 in effect one of retention of possession, which under the authorities cited is not sufficient. *Ellison* v. *Torpin,* 44 W. Va. 414, 422; 1 Williston on Contracts, § 494. He already was and for along time prior thereto had been living on portions of the property owned by his wife's parents, and cutting and logging timber thereon for them, and his return to the Varner tract to continue the same character of employment cannot therefore be said to be explainable solely upon the theory of some contract existing between him and the Gibsons, for it could easily be interpreted as a return under the same conditions as a year previous when there was no contract involved. Nor was his possession sufficiently exclusive of that of the Gibsons to create an inference of an independent agreement with them. Though the latter did not reside on the Varner tract at that time, but lived near the city of Elkins, yet defendant's wife admits that her father spent most of his time upon the tract while the cutting was in progress, doubt-

less exercising concurrent control over it. Possession, to avail under the statute of frauds, must be exclusive of that of the vendor. *Gallagher* v. *Gallagher,* cited; 2 Page on Contracts, § 1383.

Moreover, defendant made no such permanent and valuable improvements as, taken and considered in conjunction with his possession, justify setting aside the bar of the statute. *Gallagher* v. *Gallagher,* cited; 2 Page on Contracts, § 1384. He built no home or residence in which to live, but continued to reside in the house already on the tract. Though he constructed a mill for the cutting of the timber, it apparently was only a portable one, which he removed in August, 1918, when he left to cut on another parcel until working conditions should improve at the Varner place. There was nothing permanent or essentially valuable added to the premises; no improvements of any other character made, so far as the evidence discloses. He already has removed all but a minor portion of the timber, and hence there are no independent equities waranting violence to the plain letter of the statute. For these reasons we are of opinion that the contract falls within its terms and is therefore unenforceable.

But can plaintiff, who was not a party to the oral agreement of 1916, assert its unenforceability under the statute? We think he can. Until the execution of the deed of May 24, 1918, conveying the land to plaintiff, the prior verbal contract of sale of the timber thereon was merely unenforceable, not void. The operation of the statute of frauds goes only to the remedy; it voids not the contract. The vendor may consent to be bound therby. If so, acts done voluntarily thereunder pursuant to its terms are valid and of as full force and effect as if the agreement had been one specifically enforceable. Hence, such timber as defendant has already cut and removed was validly severed and lawfully taken away. *Fluharty* v. *Mills,* 49 W. Va. 446.

However, although the contract still subsists, the vendor may elect to rescind and annul it and pass title to the subject matter thereof to another not a party to or interested in the prior agreement. For when the owner lawfully may refuse to perform the contract, he may lawfully sell and convey to an-

other, and by so doing repudiate the same. That the new grantee had notice of the prior verbal agreement creates no legal objection to the second conveyance, for there were no enforceable equities attaching under the former contract. *Van Cloostere* v. *Logan,* 149 Ill. 588; *Pickerell* v. *Morss,* 97 Ill. 220; *Asher* v. *Brock,* 95 Ky. 270; 1 Williston on Contracts, § 529. He is protected by the statute to the same extent as his vendor. In *Shelton* v. *Thompson,* 96 Mo. App. 327, the defense was raised that, as the statute of frauds affected only the remedy of the parties, its benefits could not be invoked by one who was not a party to the contract; but the court said: "We hold that the defendants are not within the above rule, for the reason that their vendor voided the contract in the first instance by refusing to let plaintiff have the hogs in dispute. It would be illogical to hold that, after a vendor had repudiated an oral contract like the one in question, he could not thereafter sell the goods and give good title; that is to say, that thereafter he must keep the goods because a purchaser could not be found, for the reason that they could be taken from him, by the original vendee, which would destroy their character as articles of merchandise. But it is plain that when the vendor voids a sale under said statute, and retains the goods, his title is as if no such sale had ever been made, and he can resell and give as good a title as his own to the purchaser, who can, at a suit by the first vendee for the same goods, plead the action of the vendor as a bar to such suit." See also *First National Bank* v. *Blair State Bank,* 80 Neb. 400, and valuable monographic notes annotating that and similar cases in 127 Am. St. R. 756, 772 et seq., and 16 Ann. Cas. 412; *Collins* v. *Lackey,* 31 Okla. 776, and note; 40 L. R. A. (N. S.) 883; *Hunter* v. *Bales,* 24 Ind. 299; *Ugland* v. *Bank,* 23 N. D. 536; 25 R. C. L. title, "Statute of Frauds," § 383. It follows, then, that plaintiff has succeeded to the full rights and privileges of his vendors in and to the Varner tract.

Our order, therefore, will reverse the decree of the court below, reinstate and perpetuate the injunction, and remand the cause.

*Reversed; injunction reinstated and perpetuated; remanded.*